555 A.2d 808

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Edward Andrew PALSA, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 27, 1988.

Decided March 6, 1989.

Joseph L. Amendola, State College, for appellant.

Ray F. Gricar, Asst. Dist. Atty., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

On December 15, 1983, in a trial by jury in the Court of Common Pleas of Centre County, the appellant, Edward Andrew Palsa, was convicted of criminal attempt as a result of his efforts to gain possession of fifteen pounds of marijuana with the intent to deliver the substance to others. A sentence of six to twenty-four months imprisonment was imposed. An appeal was taken to the Superior Court, and, in a memorandum decision, the judgment of sentence was affirmed. 365 Pa.Super. 645, 526 A.2d 814. We granted allowance of appeal.

The factual background of this case is as follows. On March 28, 1983, a trooper of the Pennsylvania State Police was summoned to the scene of a one-car motor vehicle accident. The driver of the wrecked vehicle, Richard Silvoy, exhibited impaired behavior and was immediately arrested for driving under the influence of a controlled substance. A search of the vehicle was conducted, and fifteen pounds of marijuana were recovered. Silvoy was then arrested for drug offenses and transported to a medical facility where tests revealed that he was under the influence of cocaine. Later, Silvoy was taken to a state police barracks, where, after several hours, he agreed to cooperate with an investigation relating to the marijuana recovered from his vehicle.

Silvoy then spoke with an investigating officer, Trooper Rance Morey, and made statements implicating appellant as a drug offender. The statements recounted certain transactions and conversations between Silvoy and appellant. Silvoy subsequently became a fugitive from justice and was not available to testify at appellant's trial, but, despite objections from defense counsel alleging hearsay, Trooper Morey was permitted to testify to the statements in question.

Morey testified to Silvoy's statement that, at the time of his auto accident, he had been on his way to deliver marijuana to a man known as "Ed" residing at 116 East Irvin Street in State College, Pennsylvania. Morey also recounted Silvoy's statement that, just one day prior to the accident, he had sold the same man a pound of marijuana for a sum of $500.00, and, further, that the man had given him an extra $500.00 as a down payment on an order of fifteen additional pounds.

Appellant was shown at trial to be the individual referred to in Silvoy's statements as "Ed." Appellant contends, therefore, that the foregoing testimony constituted inadmissible and highly prejudicial hearsay, and that a new trial is warranted. The Commonwealth asserts, however, that the testimony was properly admitted on grounds it was not

offered for the truth of matters asserted, but rather to explain the course of subsequent police conduct. The Commonwealth notes that, in the trial court's charge to the jury, an instruction was given that this testimony should not be considered as substantive evidence of guilt, and that it could be considered only as providing a foundation for understanding why police took subsequent actions. The subsequent actions taken by police were described as follows in Trooper Morey's testimony.

After hearing the heretofore described statements from Silvoy, Morey enlisted Silvoy's cooperation in an investigative effort. Morey drove Silvoy in an undercover car to the address in State College where "Ed," to wit, appellant, resided. Morey, posing as a business associate of Silvoy's, remained in the car and sent Silvoy into appellant's residence to inform appellant that the fifteen pounds of marijuana were ready for delivery, and to request payment therefor. A few minutes later Silvoy returned to the car and handed $1,500.00 to Morey. This sum corresponded to the price of three pounds of marijuana. Silvoy was then sent back into the residence to tell appellant that the deal was for fifteen pounds, rather than three pounds, and that full payment was due. Soon thereafter Silvoy again returned to the car, and, after a few minutes, he and Morey drove away from the scene.[1]

Two hours later, Silvoy and Morey returned to the scene, and Morey sent Silvoy to appellant's residence to ask appellant to come out to the car to discuss the deal. Appellant

---

1. During Trooper Morey's Testimony on direct examination, he was instructed by the prosecutor to refrain from relating any comments made by Silvoy when Silvoy returned to the car after being inside appellant's residence. On cross-examination, however, defense counsel elicited such comments. Thus, Morey's testimony on cross-examination included the following: "[Silvoy] told me that fifteen hundred dollars was all that Ed-had at the time and he wanted to buy three pounds," and, "[Silvoy] told me that he didn't have the rest of the money and he needed some time to raise the money, so he wanted us to come back in an hour or so and give him time to raise the money, meaning Mr. Palsa."

complied, and, upon arriving at the car, said, "Hey, man, what's going on? Why can't we do the deal?" Appellant acknowledged that he had originally agreed to purchase fifteen pounds but said he could accept only three pounds because he lacked sufficient funds to purchase the rest. The three pound purchase was rejected by Morey. Appellant then inspected the marijuana and made a counterproposal, offering to pay for six pounds immediately, with payment for an additional five pounds to be made an hour later, and payment for the remaining pounds to be made the following day. Appellant said this proposal would allow him to show the marijuana to acquaintances who could furnish additional funds. Morey rejected this offer too. At various times during this conversation appellant requested a return of the $1,500.00 that he had earlier given Silvoy, but he ultimately withdrew this request and told Morey to keep the money because he had learned a "fifteen hundred dollar lesson." Finally, appellant exited from the car and returned to his residence. He was subsequently placed under arrest.

We do not believe that the course of police conduct described by Trooper Morey, leading to appellant's arrest, warranted admission of the challenged statements. It is, of course, well established that certain out-of-court statements offered to explain a course of police conduct are admissible. Such statements do not constitute hearsay since they are not offered for the truth of the matters asserted; rather, they are offered merely to show the information upon which police acted. *Commonwealth v. Sneed*, 514 Pa. 597, 606–07, 526 A.2d 749, 754 (1987); *Commonwealth v. Cruz*, 489 Pa. 559, 565, 414 A.2d 1032, 1035 (1980) (police responded to radio call reporting a disturbance); *Commonwealth v. Sampson*, 454 Pa. 215, 219, 311 A.2d 624, 626 (1973) (police declined to arrest an individual who asserted his innocence); *Commonwealth v. Tselepis*, 198 Pa.Super. 449, 452, 181 A.2d 710, 712 (1962) (police acted upon informant's tip that defendant was conducting a lottery). See also *Common-*

*wealth v. Underwood,* 347 Pa.Super. 256, 261, 500 A.2d 820, 822 (1985) ("This Court has repeatedly upheld the introduction of out-of-court statements for the purpose of showing that based on information contained in the statements, the police followed a certain course of conduct that led to the defendant's arrest.").

Nevertheless, it cannot be said that *every* out-of-court statement having bearing upon subsequent police conduct is to be admitted, for there is great risk that, despite cautionary jury instructions, certain types of statements will be considered by the jury as substantive evidence of guilt. Further, the police conduct rule does not open the door to unbounded admission of testimony, for such would nullify an accused's right to cross-examine and confront the witnesses against him.

In McCormick, *Evidence* § 249, at 734 (Cleary 3rd ed. 1984), there is set forth a summary of the theory upon which out-of-court statements are admitted to explain a course of police conduct, as well as a discussion of the danger of misuse of such statements:

> In criminal cases, an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct. His testimony that he acted "upon information received," or words to that effect, should be sufficient. Nevertheless, cases abound in which the officer is allowed to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports, on the ground that he was entitled to give the information upon which he acted. The need for the evidence is slight, the likelihood of misuse great.

(Footnotes omitted).

Clearly, there is need for a balance to be struck between avoiding the dangers of hearsay testimony and the need for evidence that explains why police pursued a given course of

action. This balancing process is governed by the sound discretion of the trial court, and, as with other evidentiary decisions, the trial court's decision will be upheld on appeal unless there has been an abuse of that discretion. See *Commonwealth v. Hart,* 479 Pa. 84, 87, 387 A.2d 845, 847 (1978) (trial court's discretion on evidentiary rulings).

The challenged statements in the present case were of a most highly incriminating sort. They contained specific assertions of criminal conduct by a named accused, and, indeed, were likely understood by the jury as providing proof as to necessary elements of the crime for which appellant was being tried. See *Commonwealth v. Carroll,* 355 Pa.Super. 569, 513 A.2d 1069 (1986) (analogous statements held inadmissible). Thus, the statements in question were plainly distinguishable from those in *Commonwealth v. Cruz,* supra, and in *Commonwealth v. Sampson,* supra, for in each of the latter cases the out-of-court statements did not implicate the accused. Nor were these statements ones that, although perhaps having incriminating aspects, provided only the information necessary for a reasonable understanding of the police conduct. See generally *Commonwealth v. Underwood,* 347 Pa.Super. at 261–64, 500 A.2d at 823–24.

In this case, the police easily could have explained the course of their conduct pertaining to the investigation and arrest of appellant, as recounted supra, without resorting to the full and explicit statements given by Silvoy. It is the prosecutor's duty to avoid the introduction of out-of-court statements that go beyond what is reasonably necessary to explain police conduct. Certainly, references to appellant's having purchased one pound of marijuana on the day prior to the attempted delivery of the fifteen pounds involved in this case could have been eliminated. The statements could have been attenuated in other ways, too, to lessen their prejudicial impact. Thus, an adequate explanation for police conduct could have been provided, while minimizing the introduction of statements made by a person who was not

under oath and who was not available for cross-examination.

It is certainly to be recognized that there is often a subtle, and elusive, difference between the use of statements to establish the truth of facts averred by one not in court and their use to establish a course of conduct by police. Further, in weighing the prejudice to the defense versus the prosecution's need for the challenged statements, the ambit of the trial court's discretion is to be preserved. In the present case, however, the statements were so highly incriminating, and the need for them in the form in which they were introduced was so lacking, that their admission cannot be sustained.[2] Appellant is entitled to a new trial.

Judgment of sentence reversed, and a new trial granted.

McDERMOTT, J., files a dissenting opinion which is joined by LARSEN and PAPADAKOS, JJ.

McDERMOTT, Justice, dissenting.

The majority totally misapprehends the evidence in this case with an astounding cecity. The crucial evidence here is not what the informant Silvoy told the police, but rather what the appellant told Officer Morey in direct, personal negotiations for the sale of the contraband. If Officer Morey is to be believed, *and he was,* no more compelling scenario of guilt is possible. Assuming the testimony of the informant Silvoy to be hearsay, it was *de minimus* compared to the inculpation offered by Officer Morey. To order a new trial here to exorcise that evidence, which was in any event cured by the trial judge's instruction, is almost irresponsible.

LARSEN and PAPADAKOS, JJ., join in this dissenting opinion.

2. In view of our disposition of this issue, we need not address other grounds for relief alleged in this appeal.