J-S10009-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANEL CUENAS, | |
| Appellant | No. 3554 EDA 2013 |

Appeal from the Judgment of Sentence September 12, 2013
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0002610-2011

BEFORE: GANTMAN, P.J., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED APRIL 14, 2015**

Appellant, Anel Cuenas, appeals from the judgment of sentence imposed after a jury conviction of aggravated assault (two counts), assault on a law enforcement officer (one count), carrying firearms without a license (eight counts), possession of an instrument of crime (one count), and criminal conspiracy to commit aggravated assault (one count).[1] We affirm.

The trial court summarized the factual history of this case as follows:

> On July 1[5], 2010 at approximately 8:38 p.m., Philadelphia Police Officers Brian Issel and his partner Kevin Livewell were in uniform in a marked police vehicle when they received a radio call to be on the lookout for a white van with the red letters KASS on the side. The radio call further stated

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a), 2702.1(a), 6105(a)(1), 907(a), and 903(c), respectively.

that the occupants of the van should be considered armed and that they were wanted for a possible prior shooting. The officers spotted the van on the next block and were following behind when the vehicle abruptly pulled over. When the driver side door started to open, the officers exited their vehicle and ordered the driver back into the van. As the driver complied, Appellant appeared on the passenger side of the van armed with a rifle and fired several shots at the officers. One of those shots hit Officer Livewell in the left leg. The officers then exchanged gunfire with Appellant and another armed male. Appellant and the other male fled, firing back as they ran. The driver of the van was taken into custody. Shortly after the shooting, Officers Issel and Livewell positively identified Appellant in separate photo arrays as the male who had shot at them with the rifle.

Officer Joseph Moore arrived on the scene a couple minutes following the shooting and began to search for the shooters after receiving information from Officer Issel concerning the direction in which they fled. A black knit hat was found outside the passenger side of the van. Carlos Garcia, the block captain on Water Street, had seen the shooter take off the hat and drop it by the passenger door of the van. When Officer Moore turned east on Clearfield Street, he observed a ski mask and assault rifle underneath a red minivan. As the officer then proceeded down an alleyway between Swanson and Water Streets he saw an assault rifle in the yard of 3047 Water Street. Another firearm, an automatic handgun with an extended magazine, was found further down the alleyway. A subsequent search of the van uncovered the presence of other firearms inside the van. Appellant's DNA was present on the black knit hat found outside the van and on the rifle seized from under the red minivan, as well as on other firearms inside the van.

Maria Santiago Rivera testified that Appellant came to her residence located at 3345 Potter Street in Philadelphia around midnight on July 16, 2010 wearing a wig and a hoodie. Ms. Rivera, whose sister is married to Appellant's cousin, stated that Appellant asked if he could stay the night with her and her children because police were looking for him in connection with the shooting of an officer. Although Ms. Rivera denied at trial that Appellant had admitted to the shooting, she gave a statement to police in which she said that Appellant told her he and his friends shot at police and that he himself had been grazed in the foot during the shootout.

- 2 -

Ms. Rivera's boyfriend, Santos Martinez, testified that Appellant was at Rivera's residence when he arrived there at around 11:30 p.m.. Mr. Martinez also stated that he saw a wig on the table. Mr. Martinez wanted Appellant to leave and he and Rivera argued about it. In a statement previously given to police, Mr. Martinez said that Appellant told him that the guns were in the van because he had been on his way to get back at someone who had threatened him. Mr. Martinez also told police in that statement that Appellant said he shot a police officer in the leg, that he himself also got shot, and that he shot at police because the van was stolen and there were firearms in the van. At trial, Martinez denied having told police anything other than that Appellant was at Rivera's residence when Martinez arrived.

Detective Robert Hesser testified to the efforts made to locate Appellant on the morning of July 17, 2010. After visiting two other locations, the detective and his SWAT unit finally found Appellant at Ms. Rivera's residence. Although Appellant initially came down the stairs from the second floor with his hands up, he turned around halfway down the stairs and tried to go back up. Police then grabbed him and took him into custody.

(Trial Court Opinion, 5/29/14, at unnumbered pages 2-4) (record citations omitted).

The trial court gave the following jury instruction:

There was evidence including the testimony of Detective Hesser and Ms. [Maria] Rivera and Santos Martinez that tended to show that [Appellant] fled from the police and/or hid from the police. Regarding the testimony of Detective Hesser the Commonwealth alleges that he made several attempts to locate [Appellant] at various addresses in Philadelphia and the testimony of Ms. Rivera and [Mr. Martinez] regarding the wig and the hoodie and [Appellant] staying at their house after his picture was in the news. The credibility, weight, and effect of this evidence is for you to decide. Generally speaking, when a crime has been committed and a person thinks he or she may be accused of committing the crime and he flees or conceals himself such flight or concealment is a circumstance tending to show the person is conscious of guilt. Such flight or concealment is a circumstance tending to show the person is conscious of guilt.

> Such flight or concealment does not necessarily show consciousness of guilt in every case. A person may flee or hide for some other motive and may do so even though innocent. Whether the evidence of flight or concealment in this case should be looked at as tending to prove guilt depends on the fact and circumstances of this case and upon the motives that may have prompted the flight or concealment. You may not find [Appellant] guilty solely on the basis of evidence of flight or concealment.

(N.T. Trial, 3/13/13, at 97-98).

On March 14, 2013, a jury convicted Appellant of the above charges. On September 12, 2013, the court sentenced Appellant to not less than forty-five nor more than 100 years' incarceration.

Appellant timely filed post-sentence motions on September 18, 2013. On November 13, 2013, Appellant filed supplemental post-sentence motions. On November 21, 2013, the trial court denied Appellant's motions, but corrected the transcript to remove a word appearing in error. Appellant timely appealed on December 16, 2013.[2]

_____

[2] The record reflects that on December 20, 2013, the trial court entered an order directing Appellant to file a Rule 1925(b) statement within twenty-one days, by January 10, 2014. (*See* Concise Statement Order, 12/20/13). Appellant filed his facially untimely Rule 1925(b) statement on January 15, 2014 in which he acknowledged that the court entered its order on December 20, 2013. (*See* 1925(b) Statement, 1/15/14, at 1 n.1). However, Appellant asserts that his statement is timely because "[t]he enclosure letter . . . is dated January 2, 2014 and the envelope containing it is postmarked 1/2/14[, and c]ounsel received it a few days after its postmark." (*Id.*). The trial court entered its Rule 1925(a) opinion on May 29, 2014. *See* Pa.R.A.P. 1925(a). Therefore, we will give Appellant the benefit of the doubt and review his appeal on the merits. *See* ***Commonwealth v. Burton***, 973 A.2d 428, 433 (Pa. Super. 2009) (*en banc*) (considering the merits where "counsel has filed a [facially untimely]
*(Footnote Continued Next Page)*

Appellant raises the following issues for our review:

I.    Did the trial court abuse its discretion when it allowed Police Officer Issel to testify he stopped a white van with red letters K-A-S-S on the side based on a radio call that claimed its occupants were considered armed and wanted for a possible prior shooting?

II.    Did the [trial] court err when it allowed substantive use of the police statement made by Marie Santiago Rivera who could not adopt the statement because she could not read or write?

III.    Did the [trial] court err in its [jury] instructions on flight in the context of this case?

IV.    Was the evidence sufficient to sustain the aggravated assault convictions because the wound attempted or inflicted was not such as to comprise "serious bodily harm"?

(Appellant's Brief, at 5).[3]

In his first and second issues, Appellant argues that the trial court abused its discretion in making specific evidentiary rulings. (**See** Appellant's Brief at 11-22). We disagree.

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Rule 1925 concise statement setting forth the alleged error, and the trial court has filed an opinion addressing the issue presented in the 1925(b) concise statement.").

[3] We note that on July 15, 2014, Appellant requested an extension to file his brief. This Court granted his request and extended the deadline until September 12, 2014. (**See** _Per Curiam_ Order, 7/17/14). On September 5, 2014, Appellant requested a second extension. This Court granted his request and gave him until November 12, 2014, specifying, "[n]o further extensions will be granted absent good cause. Counsel's busy schedule will not be considered good cause." (_Per Curiam_ Order, 9/11/14). Appellant failed to file his brief timely, instead, filing it six days late on November 18, 2014.

It is well[-]settled that the admission or rejection of [witness testimony] is within the sound discretion of the trial court. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion [that] overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Davido*, 106 A.3d 611, 645 (Pa. 2014) (citations and quotation marks omitted).

In his first issue, Appellant claims that the trial court erred in permitting Officer Issel to testify that he stopped the van based on "[t]he content of the radio call implicat[ing] the occupants . . . in a possible prior shooting . . . ." (Appellant's Brief, at 12) (internal quotation marks omitted). Specifically, Appellant argues that the radio call's content was hearsay, the jury did not need to know its substance, and the court did not balance the content's probative value with its prejudicial impact. (*See id.* at 12-15). This issue is waived.

It is well-settled that:

If a Rule 1925(b) statement is too vague, the trial judge may find waiver and disregard any argument.

When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. In other words, a [c]oncise [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all.

*Commonwealth v. Reeves*, 907 A.2d 1, 2 (Pa. Super. 2006), *appeal denied*, 919 A.2d 956 (Pa. 2007) (citations omitted).

Here, the record reflects that Appellant's Rule 1925(b) statement asserts that "[t]he trial court erred in not striking the testimony of Officer Issel that the radio call stated the occupants of the van were considered armed and wanted for a possible prior shooting[,] . . . not granting a mistrial . . . [and] stat[ing] this testimony was not offered for its truth." (Rule 1925(b) Statement, 1/15/14, at 2 ¶ 4). The trial court properly found that "[n]o theory or rationale to support this allegation is mentioned, leaving the court to guess as to the basis for the claim." (Trial Ct. Op., at unnumbered page 7); *see also Reeves*, *supra* at 2.

Moreover, although Appellant's counsel objected to Officer Issel's testimony of the radio call as hearsay, counsel stated "I understand [the Commonwealth] may have [the radio call] and they can play it [for the jury.]" (N.T. Trial, 3/07/13, at 34).

The trial court explained that:

The sole basis offered for Appellant's objection to the admission of this testimony at trial was that it constituted inadmissible hearsay. The testimony concerning the radio call was not hearsay as it was not being offered for the truth of the matter stated, but rather to explain why police stopped the van in which Appellant was riding. The Pennsylvania Supreme Court has addressed evidence of police course of conduct as follows: "[i]t is, of course, well established that certain out-of-court statements offered to explain a course of police conduct are admissible. Such statements do not constitute hearsay [because] they are not offered for the truth of the matters asserted; rather, they are offered merely to show the

- 7 -

information upon which police acted." ***Commonwealth v. Yates***, 613 A.2d 542, 543 (Pa. 1992); ***Commonwealth v. Palsa***, 555 A.2d 808, 810 (Pa. 1989). Here, the [c]ourt upheld the admission of this testimony on the basis that it was necessary to explain the course of police conduct, reasoning that without the testimony the jury would have had no means of knowing why the police were looking for and stopped the van. . . .

Moreover, it should be noted that the [c]ourt, in order to avoid any possible prejudice to Appellant [], instructed the jurors *sua sponte* that any reference to any activity that this van may have been involved in prior to the incident on trial should not be considered in their evaluation of the evidence and should not be held against Appellant in any way. The [c]ourt made it clear that the radio call was being admitted merely for them to consider why the police engaged in their course of conduct after receiving the call. Our law presumes that jurors follow a court's instruction. [***See***] ***Commonwealth v. Baker***, [] 614 A.2d 663, 672 ([Pa] 1992). Accordingly, this evidence was properly admitted in this case, and Appellant was not prejudiced by the officer's testimony.

(Trial Ct. Op., at unnumbered pages 8-9) (record citations omitted). Upon review, we agree and conclude that the record supports the court's determination and that it did not abuse its discretion. ***See Davido***, ***supra*** at 645. Accordingly, Appellant's first issue does not merit relief.

In his second issue, Appellant claims that the court erred in permitting the substantive use of Ms. Rivera's prior inconsistent statement when she "testified repeatedly that she could not read or write, which prevented her from reading over her police statement and/or adopting it." (Appellant's Brief, at 18). We disagree.

Pennsylvania Rule of Evidence 803.1 provides, in relevant part:

The following statement[] [is] not excluded by the rule against hearsay if the declarant testifies and is subject to cross-examination about the prior statement:

**(1) Prior Inconsistent Statement of Declarant-Witness.** A prior statement by a declarant-witness that is inconsistent with the declarant-witness's testimony and:

> (A) was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition;
>
> (B) is a writing signed and adopted by the declarant; or
>
> (C) is a verbatim contemporaneous electronic, audiotaped, or videotaped recording of an oral statement.

Pa.R.E. 803.1(1).

This Court has held that:

> . . . [A] prior inconsistent statement by a non-party witness shall be used as substantive evidence only when it was given under oath at a formal legal proceeding, or the statement was reduced to a writing signed and adopted by the declarant, or the statement was recorded verbatim contemporaneously with the making of the statement.

*Commonwealth v. Buford*, 101 A.3d 1182, 1200 (Pa. Super. 2014).

Here, the trial court explained that:

> . . .[Ms.] Rivera was a reluctant witness who was afraid to testify against Appellant at trial. To that end, although she admitted at trial that she told police much of what was contained in her statement, she denied she ever said that Appellant told her he shot a police officer. She also claimed she was unable to review the statement she signed because she cannot read. Contrary to Ms. Rivera's claim, Detective David Schmidt testified that when he interviewed Ms. Rivera he asked her to read the first two questions after the statement had been printed out in order to ensure that she could read. The detective stated that Ms. Rivera read the questions and then reviewed the rest of the statement before signing it. Additionally, when the prosecutor reviewed the statement line by line with Ms. Rivera, she never said that anything contained in the statement was incorrect.

Moreover, the facts Ms. Rivera recounted to the prosecutor were the same as those contained in the statement. . . .

(Trial Ct. Op., at unnumbered page 9) (record citations omitted). Upon review, we agree with the trial court's admission of Ms. Rivera's prior inconsistent statement. *See Buford*, *supra* at 1200.

Additionally, our independent review of the record reflects that Ms. Rivera began to read her statement at trial until Appellant's counsel objected. (*See* N.T. Trial, 3/08/13, at 104). Accordingly, we conclude that the record supports the court's decision to allow Ms. Rivera's statement. *See Davido*, *supra* at 645. Appellant's second issue does not merit relief.

In his third issue, Appellant claims that the court erred in its jury instruction on flight. (*See* Appellant's Brief, at 23-25). Specifically, he argues that "[e]quating an effort to avoid detection to flight . . . places far too much emphasis and weight on the effort to avoid detection and bolsters the Commonwealth's case for no valid reason." (*Id.* at 25). We disagree.

"[I]t is well-established that an instruction shall be given only when either the evidence of record supports the instruction or the instruction is as to a well[-]established principle of law." *Commonwealth v. Robinson*, 5 A.3d 339, 344 (Pa. Super. 2010), *appeal denied*, 19 A.3d 1051 (Pa. 2011) (citation omitted).

This Court has held that "[w]hen a person knows that he is wanted in connection with a criminal investigation, and flees or conceals himself, such conduct is admissible as evidence of consciousness of guilt."

*Commonwealth v. Hudson*, 955 A.2d 1031, 1036 (Pa. Super. 2008), *appeal denied*, 964 A.2d 1 (Pa. 2009) (citation omitted).

Here, the Commonwealth presented evidence "that Appellant was concealing himself from the police as the police had to make several attempts to locate [him]." (Trial Ct. Op., at unnumbered page 10; **see also** N.T. Trial, 3/12/13, at 96-104). The evidence showed that Appellant was aware that he was suspected of shooting a police officer. (**See** N.T. Trial, 3/08/13, at 88). Appellant attempted to avoid detection by wearing a wig and a hoodie when he arrived at Ms. Rivera's home. (**See id.** at 86). When police arrived, he tried to flee through the back of the house and then up the stairs. (**See** N.T. Trial, 3/11/13, at 65-66; N.T. Trial, 3/12/13, at 105-06).

Therefore, the evidence supports the court's jury instruction on flight. **See Robinson**, **supra** at 344. Accordingly, Appellant's third issue lacks merit.

In his final issue, Appellant challenges the sufficiency of the evidence to sustain an aggravated assault conviction.[4] (**See** Appellant's Brief, at 26-27). He argues that "there was no medical testimony establishing that [Officer Livewell's] wound was sufficient to meet the serious bodily harm

---

[4] We note that Appellant has abandoned his challenge to the sufficiency of the evidence identifying him as the perpetrator. (**See** Rule 1925(b) Statement, 1/15/14, at 1 ¶ 1; Appellant's Brief, at 5).

statutory definition . . . [and] Officer Issel . . . suffered no wound at all."

(*Id.* at 27).  We disagree.

It is well-settled that:

> In challenges to the sufficiency of the evidence, our standard of review is *de novo,* however, our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner.  Evidence is sufficient if it can support every element of the crime charged beyond a reasonable doubt.  The evidence does not need to disprove every possibility of innocence, and doubts as to guilt, the credibility of witnesses, and the weight of the evidence are for the fact-finder to decide.  We will not disturb the verdict unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Forrey*, 2015 WL 223857 at *2 (Pa. Super. filed Jan. 16, 2015) (citations and quotation marks omitted).

As charged in this case, "[a] person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]"  18 Pa.C.S.A. § 2702(a)(1).

Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  18 Pa.C.S.A. § 2301; *see also Commonwealth v. Phillips*, 410 A.2d 832, 834 (Pa. Super. 1979) (finding gunshot wound to leg requiring

- 12 -

two weeks of hospitalization and rendering victim unable to walk for one month is serious bodily injury).

However,

> Where the victim does not suffer serious bodily injury, the charge of aggravated assault can be supported only if the evidence supports a finding of an attempt to cause such injury. "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a). An attempt under Subsection 2702(a)(1) requires some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury. A person acts intentionally with respect to a material element of an offense when ... it is his conscious object to engage in conduct of that nature or to cause such a result[.] As intent is a subjective frame of mind, it is of necessity difficult of direct proof. The intent to cause serious bodily injury may be proven by direct or circumstantial evidence.

*Commonwealth v. Martuscelli*, 54 A.3d 940, 948 (Pa. Super. 2012) (case citations and some quotation marks omitted); *see also Phillips*, *supra* at 834 (finding act of pointing gun towards victim evidenced intent to cause serious bodily injury).

Here, Appellant concedes that he shot Officer Livewell in the leg. (*See* Appellant's Brief, at 7). The wound "required surgery, hospitalization, a subsequent skin graft, and months of physical therapy and wound care." (Trial Ct. Op., at unnumbered page 6). Officer Livewell has a visible scar and lacks feeling on the inside of his leg from the ankle to the knee. (*See* N.T. Trial, 3/08/13, at 68). Accordingly, Officer Livewell suffered a serious bodily injury. *See* 18 Pa.C.S.A. § 2301; *Phillips*, *supra* at 834.

Appellant further concedes that he shot at Officer Issel. (**See** Appellant's Brief, at 7). Although Officer Issel did not suffer a serious bodily injury, Appellant's act of shooting at him and Officer Livewell demonstrated his intent to cause serious bodily injury. **See Martuscelli**, **supra** at 948; **Phillips**, **supra** at 834.

Accordingly, viewing the evidence in the light most favorable to the Commonwealth, we conclude that it was sufficient to sustain the jury's conviction of aggravated assault. **See Forrey**, **supra** at *2.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/14/2015