J-S86007-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ANTONIO KELLY | : | |
| | : | |
| Appellant | : | No. 1821 WDA 2015 |

Appeal from the Judgment of Sentence October 21, 2015
In the Court of Common Pleas of Lawrence County
Criminal Division at No(s):  CP-37-CR-0000819-2014

BEFORE:  GANTMAN, P.J., MOULTON, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JANUARY 03, 2017**

Appellant Antonio Kelly appeals from the judgment of sentence entered by the Court of Common Pleas of Lawrence County after a jury convicted Appellant of first-degree murder and tampering with evidence. Appellant asserts his murder conviction is against the weight of the evidence and argues that the trial court abused its discretion in various evidentiary matters.  After careful review, we affirm.

On June 20, 2014, at approximately 7:00 p.m., officers of the New Castle Police Department responded to a report of a possible homicide at the Crestview Gardens housing projects ("Crestview Gardens").  The officers discovered the body of Andrew Edwards, Jr. ("the victim"), lying in the first floor hallway located at 1110 Pin Oak Drive.  The victim's body had seven gunshot wounds: two bullet wounds above his eye, one bullet hole in his nose, three bullet wounds to the right front shoulder, and one bullet wound

*Former Justice specially assigned to the Superior Court.

in the left thigh. After securing the scene and conducting their investigation, the officers took the victim's body to the Beaver Valley Medical Center for an autopsy. Dr. Todd Luckasevic, a forensic pathologist, determined that the victim died as a result of the bullet wounds to his head.

Detectives Brian Cuscino and Aaron Vitale reviewed the Crestview Garden surveillance video, which recorded the shooting. The footage showed the victim walk past 1110 Pin Oak Drive, where he had contact with three males. When the victim tried to enter the home at this address, the three men followed him and shot him. After receiving tips about the murder, the officers were able to identify the three men in the video as Appellant, Samjuan Allen, and Keshawn Johnson. Several witnesses were able to identify Appellant, who was dressed in a white t-shirt and gray shorts. While the video does not show the actual shots being fired, it depicts Appellant to the right of the doorway facing the victim, Appellant stepping towards the victim, and the victim falling to the ground. However, the video does show Appellant turning to leave and making a motion consistent with tucking an object into his waistband.

Appellant was charged with criminal homicide and related offenses in connection with the victim's murder. Appellant proceeded to a jury trial which commenced on September 22, 2015. Detective Cuscino testified early in the trial to provide a roadmap of the police investigation which ultimately led the officers to conclude that Appellant was the individual responsible for the victim's death. The trial court allowed Detective Cuscino to testify as to

statements made by several of the witnesses that the prosecution intended to present at trial and submit to cross-examination.

Appellant's girlfriend, Jalisa Allen, was one of the witnesses that identified Appellant in the surveillance video from Crestview Gardens. Ms. Allen testified that on the day of the murder, she saw Appellant in the morning wearing a white shirt and gray shorts. When she picked him up later from Neshannock Village, she noticed Appellant had changed into black sweatpants. She remembered this fact as she and Appellant had an argument after she accused Appellant of being with another woman because he changed his clothes. This statement was corroborated by surveillance video the officers then acquired from Neshannock Village, showing Appellant in a white shirt and black sweatpants. The officers also were able to obtain the shoes they believe Appellant wore at the time of the murder, which had the laces removed and had been bleached.

In addition, Ms. Allen discovered that her firearm, a black .22 caliber revolver with a brown handle, may have been used to commit the victim's murder. Ms. Allen indicated that several days after the murder, Appellant came to her residence and inquired as to whether Ms. Allen removed the shells from her firearm. When she responded "no," Appellant immediately went upstairs and emptied the shells from the firearm, and left the home with the shells in his hand. Appellant did not have a license to carry a concealed weapon. A week later, Appellant offered to buy Ms. Allen a new firearm and told her to get rid of her .22 caliber revolver. While Ms. Allen

initially refused, she eventually sold the firearm. After the officers contacted her in an attempt to retrieve the murder weapon, Ms. Allen was able to obtain the firearm and turn it over to the police.

Samjuan Allen, one of the individuals identified on the surveillance video at Crestview Gardens, also cooperated with the police investigation. Mr. Allen testified that on the night of the murder, he intended to go to his cousin's residence at 1108 Pin Oak Drive. Before he arrived there, he met up with Keshawn Johnson and Appellant. Mr. Allen indicated that he had only known Appellant for about a week prior to this meeting. At approximately 7:30 p.m., Mr. Allen observed the victim walk past them while visibly intoxicated. The victim began staring at the men and said, "what the "F' you all looking at?" Notes of Testimony (N.T.) Trial, 9/25/15, at 11. Thereafter, the victim continued walking towards the home at 1110 Pin Oak Drive.

Mr. Allen indicated that they followed the victim, who kept pulling up his pants and saying "crazy" things to the men. N.T. at 12. Mr. Allen claimed that he attempted to calm the victim down. Mr. Allen suddenly heard gunshots, which startled him and caused him to get out of the way. Thereafter Mr. Allen noticed Appellant step forward toward the victim, but testified that he did not see Appellant shoot the victim. At that point, Mr. Allen ran from the scene to his mother's home in Crestview Gardens. Mr. Allen specifically identified Appellant in a photo array.

- 4 -

Lionel Edwards testified that, on the day of the murder, he was standing in front of 1112 Pin Oak Drive with his children when he saw the victim walking down the street, visibly intoxicated. When the three men approached the victim and commotion ensued, Mr. Edwards gathered his children quickly and attempted to leave the area. Mr. Edwards testified that he heard gunshots, but did not see the shooter as he was trying to protect his children. When Mr. Edwards looked back after the shooting stopped, he saw Appellant holding a gun. He did not see any other individual in the possession of a weapon.

Further, the Commonwealth presented the testimony of Raymond Bailey, who testified that he was present at Crestview Gardens on the day of the shooting. Specifically, Mr. Bailey witnessed Appellant shoot the victim in the head as Mr. Bailey hid between two cars. Surveillance photos confirmed that Mr. Bailey was at the crime scene when the shooting occurred. While Mr. Bailey admitted that he was incarcerated at the time of trial for pending drug charges, Mr. Bailey claimed he had not made any deal with the prosecution in exchange for his testimony in this case.

After the conclusion of the trial, the jury convicted Appellant of first-degree murder and tampering or concealing physical evidence. On October 21, 2015, the trial court sentenced Appellant to life imprisonment for the murder conviction. Appellant did not file a post-sentence motion, but filed this timely appeal as well as a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

On appeal, Appellant raises the following issues for our review:

I.    Whether the verdict was against the weight of the evidence?

II.   Whether the trial court erred in allowing Detective Brian Cuscino to testify to hearsay evidence?

III.  Whether the trial court erred in allowing [the admission of] tape recording of [Appellant's] conversations while [Appellant] was incarcerated on other non-related charges?

Appellant's Brief, at 5 (renumbered for ease of review).[1]

_____

[1] We note that Appellant's counsel included two additional issues in his statement of questions involved in his brief that he expressly abandoned on appeal.

First, Appellant included a challenge to the sufficiency of the evidence supporting his murder conviction in his statement of questions presented in his brief.  However, in the argument section of the brief, Appellant's counsel concedes that the Commonwealth presented sufficient evidence to sustain the murder conviction, but focuses his advocacy on criticizing the credibility of the prosecution witnesses in his challenge to the weight of the evidence.

Second, Appellant raises a claim that the trial court erred in allowing prosecution witness Raymond Bailey to testify.  However, in the argument section of the brief, Appellant's counsel asserts that this issue is not ripe for review and should be brought as an ineffectiveness claim under the Post Conviction Relief Act.

As Appellant does not include any advocacy supporting either issue, we need not review these claims on appeal.  ***See Commonwealth v. Johnson***, 604 Pa. 176, 191, 985 A.2d 915, 924 (2009) (reiterating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived").

First, Appellant claims the jury's decision to convict him of first-degree murder is against the weight of the evidence. However, we note that Appellant did not raise this issue in the trial court before filing this appeal. Our rules of criminal procedure provide that "[a] claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607(A). "The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." Pa.R.Crim.P. 607, Comment. **See Commonwealth v. Sherwood**, 603 Pa. 92, 110, 982 A.2d 483, 494 (2009) (noting that the appellant's "failure to challenge the weight of the evidence before the trial court deprived that court of an opportunity to exercise discretion on the question of whether to grant a new trial").

While the trial court addressed Appellant's challenge to the weight of the evidence in its Rule 1925(a) opinion, this fact does not entitle Appellant to appellate review of his unpreserved claim. **See id**. (noting that even though the appellant raised a weight of the evidence claim in his 1925(b) statement and the trial court addressed the weight claim in its 1925(a) opinion, appellant's weight of the evidence claim was waived for appellate review as the appellant failed to raise the claim at sentencing or in a post-sentence motion). Accordingly, as Appellant waived his challenge to the weight of the evidence, we decline to review this issue further.

Second, Appellant claims that the trial court abused its discretion in allowing Sergeant Cuscino to testify to hearsay statements made by prosecution witnesses Jalisa Allen, Samjuan Allen, and Lionel Edwards.

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of the evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

*Commonwealth v. Antidormi*, 84 A.3d 736, 749 (Pa.Super. 2014) (citation omitted).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Commonwealth v. Dent*, 837 A.2d 571, 577 (Pa.Super. 2003); Pa.R.E. 801(c). However, "certain out-of-court statements offered to explain a course of police conduct are admissible[;] [s]uch statements do not constitute hearsay since they are not offered for the truth of the matters asserted; rather, they are offered merely to show the information upon which police acted." *Commonwealth v. Palsa*, 521 Pa. 113, 117, 555 A.2d 808, 810 (1989). Nevertheless, the Supreme Court placed a limitation on the admission of these statements:

> it cannot be said that *every* out-of-court statement having bearing upon subsequent police conduct is to be admitted, for

there is great risk that, despite cautionary jury instructions, certain types of statements will be considered by the jury as substantive evidence of guilt. Further, the police conduct rule does not open the door to unbounded admission of testimony, for such would nullify an accused's right to cross-examine and confront the witnesses against him.

*Id*. at 118, 555 A.2d at 810. In **Palsa**, the Supreme Court granted the defendant a new trial when the arresting officer was permitted to explain his course of conduct pertaining to his investigation and arrest of the defendant by testifying to full and explicit statements made by an informant who did not testify at the defendant's trial.

Specifically, in this case, Detective Cuscino testified that Jalisa Allen identified Appellant in the Crestview Gardens surveillance video and told him about her interactions with Appellant on the day of the victim's murder. From this information, Detective Cuscino was able to form a timeline of Appellant's whereabouts that day and obtained additional surveillance footage of him that day at Crestview Gardens and Neshannock Village. In addition, Detective Cuscino testified that Jalisa Allen shared that Appellant borrowed her firearm and then tried to convince her to dispose of the weapon after the victim's murder. From this information, Detective Cuscino was able to obtain the firearm after the crime. In addition, Detective Cuscino testified that Samjuan Allen also identified Appellant as the shooter in a lineup. Both Jalisa Allen and Samjuan Allen testified later at Appellant's trial and were subject to cross-examination. At trial, Samjuan Allen testified that he heard shots go off and saw Appellant step towards the victim, but

did not see Appellant shoot the victim as he was running away. He admitted identifying Appellant in a lineup.

We find that Detective Cuscino's testimony provided the jury with a chronological account of the progression of the investigation, which was based on information received from surveillance footage and multiple individuals. Detective Cuscino did not offer the statements for their truth, but to explain his course of conduct. We also find that this case is distinguishable from **Palsa** as the prosecution in this case was not attempting to indirectly introduce inadmissible hearsay of a third party who would not testify at trial and be subject to cross-examination. **See Commonwealth v. Jones**, 540 Pa. 442, 451, 658 A.2d 746, 751 (1995) (noting that in cases where the third-party declarant does not testify, a concern exists that by allowing the police to testify regarding a declarant's statement, the jury might take the statement as substantive evidence of guilt without allowing the accused to cross-examine the declarant).

Even assuming *arguendo* that the trial court improperly allowed Detective Cuscino to testify to these out-of-court statements, the prejudice to Appellant was minimal as the declarants subsequently testified and were subject to cross-examination by Appellant's counsel. Moreover, the Commonwealth offered the testimony of eyewitnesses who specifically saw Appellant shoot the victim in the head or testified that he was the only individual at the scene with a weapon. This testimony along with the video surveillance footage and physical evidence found by police constituted

overwhelming evidence of Appellant's guilt. As a result, any error in allowing Detective Cuscino to testify to the prosecution witnesses' out-of-court statements was harmless. ***Commonwealth v. Jones***, 540 Pa. 442, 446–47, 658 A.2d 746, 749 (1995) (citation omitted) ("[a]n error may be harmless where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict"). Accordingly, we find this claim to be meritless.

Third, Appellant contends the trial court erred in admitting into evidence the tape recordings of Appellant's conversations with Jalisa Allen while Appellant was incarcerated on other charges. In those conversations, Appellant told Ms. Allen to dispose of a firearm that she had at her home shortly after the victim's murder. Specifically, Appellant argues that Commonwealth only played portions of the telephone conversations and mislead the jury by taking his statements out of context. Essentially, Appellant argues that the prejudicial effect of the admission of the evidence outweighed its probative value.

As noted above, we review a trial court's decisions on evidentiary matters under an abuse of discretion standard. ***See Antidormi***, ***supra***. The recorded conversations in which Appellant repeatedly ordered Ms. Allen to dispose of her firearm were relevant evidence offered by the Commonwealth to prove its allegations that Appellant had tampered or attempted to conceal evidence. Moreover, the conversations were probative

evidence of Appellant's guilt and attempt to conceal his involvement in the victim's murder. As a result, the taped recordings have significant probative value for the Commonwealth's case.

Moreover, Appellant has not shown how the admission of the recordings resulted in unfair prejudice. Appellant does not argue that the recordings should have been excluded due to Appellant's incarceration on other charges as the jury was not informed that Appellant was in jail while the conversations were recorded. We also note that Appellant was aware that all his conversations from prison were recorded. Moreover, while Appellant suggests he was prejudiced by the Commonwealth's decision to play limited portions of the taped discussions, he offers no specific explanation to clarify how the Commonwealth allegedly took his statements out of context or how those statements were misleading to the jury. After the Commonwealth called Jalisa Allen to provide context to the conversations, the recordings were admitted into evidence and Appellant was given the opportunity to cross-examine Ms. Allen.

As a result, we conclude that the trial court did not err in admitting these recorded conversations as they were highly relevant to the prosecution and not unfairly prejudicial to Appellant.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/3/2017</u>