**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AUDRETTE WILLIAMS | : | |
| | : | |
| Appellant | : | No. 1662 EDA 2020 |

Appeal from the Judgment of Sentence Entered June 29, 2018
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0002483-2017

BEFORE:   PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PANELLA, P.J.:                    **FILED:  APRIL 9, 2021**

Audrette Williams appeals from the judgment of sentence that was entered by the Bucks County Court of Common Pleas on June 29, 2018. Following a bench trial, Williams was convicted of possession with intent to deliver a controlled substance, possession of a firearm prohibited, and firearms not to be carried without a license.[1] He was sentenced to an aggregate term of seven to fifteen years' imprisonment. We affirm.

On December 20, 2016, Officer Jason Reilly responded to calls regarding shots fired in the area of a residence at 1813 Foster Avenue Circle, Bristol

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant was charged with additional offenses at a separate docket not at issue in this appeal.

Township, Bucks County, including one call from the occupant of the residence, Lindora Wise. *See* N.T., 2/12/2018, at 11, 14. After arriving at the residence, Wise directed Officer Reilly to the master bedroom, where he observed a hole in the screen of the window and a bullet embedded on a pillow. *See id*. at 15. Officer Reilly advised the on-site supervisor, Sergeant Thomas Gaffney about his observations.

Around the same time, a call had come in regarding a domestic disturbance at the Quality Inn in Bristol Township. Several officers responded to the hotel, and requested Sergeant Gaffney to respond as well. *See id*. at 20-21. Sergeant Gaffney assigned Officer Paul Shallcross, who was also on scene at the residence, to respond while he finished at the residence. *See id*. at 39-40. Upon arriving, Officer Shallcross learned from the clerk who made the call that a female wearing a white coat and a male had been arguing; the female subsequently left out the back door. *See id*. at 40. After stepping outside, Officer Shallcross observed a silver Toyota Solara and the driver, Emonee Peterson, wearing a white coat. *See id*. at 42. While Officer Shallcross was speaking with Peterson, Williams drove up in a black Nissan Sentra and Peterson stated, "That's him." *See id*. at 49.

When Sergeant Gaffney arrived at the hotel, he observed a very angry and upset young woman, a small silver car, a black Nissan, and Williams in the back seat of a police car. *See id*. at 22-23. Sergeant Gaffney determined that Tiarra Giovannetti owned the black Nissan and the vehicle was registered

to her as an occupant at the hotel. *See id*. at 25-26. He obtained consent to search the car, where he found a significant amount of loose and bundled heroin in the center console and a firearm in the trunk. *See id*. at 26-33.

Video camera footage obtained from the area around Ms. Wise's residence, pieced together an interaction between a dark sedan and a light-colored car around the time the bullet invaded Ms. Wise's home. The video footage, which was shown to the trial court, includes an instance which the testifying officer described as a visible muzzle flash from a pistol from the dark sedan to the light-colored car. *See id*. at 71-72.

After he was taken into custody, Williams was transported to the police station where he discussed potential cooperation with the police and stated that he obtained his heroin from sources in Philadelphia and New Jersey, and how he could obtain raw heroin. *See id*. at 75-76. He also stated he had bought the firearm earlier in the day. *See id*. at 76.

Bucks County Detective Iran Millan, testifying as an expert in narcotics trafficking, stated the amount, value, and packaging of the heroin was indicative of an intent to distribute. *See id*. at 88-89. The amount of cash found, the gun, and Williams's statement to police regarding "raw" heroin, also led him to believe that Williams possessed the drugs with an intent to distribute. *See id*. at 89-90.

The Commonwealth entered a stipulated report showing that the projectile recovered from 1813 Foster Avenue Circle matched the firearm

recovered from the trunk at the hotel. ***See id***. at 102. Williams did not have a permit to carry a firearm and was not permitted to possess a firearm due to three prior felony convictions. ***See id***. at 102-103. Trajectory tracing of the bullet was consistent with the location of the muzzle flash in the video. ***See id***. at 105-106.

On appeal, Williams asserts he should receive a new trial because inadmissible hearsay identifying him as a likely perpetrator of the crime was introduced at trial. Specifically, Williams takes issue with the court allowing Officer Shallcross to bring in Peterson's statement of "[t]hat's him" during his testimony.

When considering the admission of evidence, our standard of review is very narrow. Our review of a trial court's evidentiary ruling is limited to determining whether the trial court abused its discretion. ***See Commonwealth v. Dengler***, 890 A.2d 372, 379 (Pa. 2005). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." ***Id***. (citation omitted). Finally, "[t]o constitute reversible error, an evidentiary ruling must not only be erroneous but also harmful or prejudicial to the complaining party." ***Commonwealth v. Lopez***, 57 A.3d 74, 81 (Pa. Super. 2012) (citation omitted).

Williams claims the trial court erred in permitting Officer Shallcross to testify regarding Peterson's statement because it was hearsay. Defense counsel objected on hearsay grounds, but the trial court overruled the objection, allowing the testimony for "notice". *See* N.T., 2/12/2018, at 49.

> Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement. The rule against admitting hearsay evidence stems from its presumed unreliability, because the declarant cannot be challenged regarding the accuracy of the statement. But it is well established that certain out-of-court statements offered to explain the course of police conduct are admissible because they are offered not for the truth of the matters asserted but rather to show the information upon which police acted. The trial court, in exercising discretion over the admission of such statements, must balance the prosecution's need for the statements against any prejudice arising therefrom.

*Commonwealth v. Chmiel*, 889 A.2d 501, 532-33 (Pa. 2005) (internal citations omitted).

Williams avers that the sole purpose for the presentation of the testimony was to identify him as the perpetrator of a crime.

Our Supreme Court has previously noted the need for weighing the dangers of hearsay testimony against the need for evidence to explain why police pursued a given course of action, and found that this balancing process lies in the sound discretion of the trial court, which will be upheld on appeal unless there has been an abuse of discretion. *See Commonwealth v. Palsa*, 555 A.2d 808, 811 (Pa. 1989).

A review of the testimony reveals that Officer Shallcross testified to Peterson's out of court identification of Williams at the hotel. He then

recounted the steps taken in the investigation and the information that accumulated afterwards.

Importantly, Peterson's out of court statement did not directly implicate Williams in the crimes which form the basis of this appeal. While the identification led police to stop Williams, it did not tend to prove that Williams possessed either the heroin or the firearm. Instead, the nature of the testimony was precisely the type of evidence admissible as course of conduct testimony because it provided a complete picture of the investigation and did not go beyond what was reasonably necessary to explain this conduct. In fact, the Commonwealth attempted to admit other statements made by Peterson at the same time as the above statement as an excited utterance, and after an extensive review, the trial court denied the request. *See* N.T., 2/12/2018 Transcript, at 44-49, 94-98, 110-115.

Officer Shallcross's testimony regarding the course of the investigation was properly admitted. We therefore find Williams's claim is meritless.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/9/21