414 A.2d 1032

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jose CRUZ, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 24, 1980.

Decided May 30, 1980.

560

Stanley Bashman, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Division, Asst. Dist. Atty., Steven J. Cooperstein, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

EAGEN, Chief Justice.

This is an appeal from the judgment of sentence imposed on June 20, 1978 by the Court of Common Pleas of Philadelphia County upon appellant, Jose Cruz, following his conviction by a jury of murder of the third degree and the denial of his post-verdict motions. The charges arose from the killing of one Nollie Bishop in the City of Philadelphia in June 1975. Cruz challenges the sufficiency of the evidence and asserts five trial errors were committed by the trial court. We reject his contentions and affirm the judgment of sentence.

The evidence produced at Cruz's trial established the following: On the night of June 28, 1975, Kenneth Hill observed a man he believed to be sleeping in the back seat of an automobile parked in the 5400 block of Baynton Street in Philadelphia. The following afternoon when Hill again saw the man in the same position, he opened the car door and discovered he was dead. The victim, identified as Nollie Bishop, also known as Dennis Bishop, had been dead for at least twenty-four hours, and his death had been caused by sixteen stab wounds of the chest and abdomen inflicted with a small object, such as a Phillips screwdriver or an ice pick, and by strangulation around the neck occurring at about the same time as the stabbing.

Detective Floyd Gallo was assigned to investigate Bishop's murder, but no leads were discovered, and the investigation was dormant for over two years. On July 25, 1977, Officer James Greer, who was on routine patrol in the 5400 block of Wakefield Street in Philadelphia, observed Cruz and one Glenda Jean Swift on the street arguing in loud voices. During questioning, Swift told the officer there was a bench warrant outstanding for Cruz. Officer Greer transported Swift and Cruz to the 14th police district station to determine whether, in fact, Cruz was wanted on a bench warrant.

At about the same time, Officer John Bailey arrived at the 14th district station with a man named Herbert Washington whom he knew personally. Officer Bailey overheard Cruz say Swift was his woman. Bailey knew, to the contrary, that Swift was Washington's girlfriend and told Cruz so. Thereupon, Cruz became enraged and said, "I must have been some kind of fool. I'm going to take her down with me." When Officer Bailey asked for an explanation, Cruz mentioned the Bishop murder that occurred two years earlier and asked to speak to Homicide Detective Floyd Gallo.

Cruz spoke with Detective Gallo by telephone and said he had tried to contact him for the past year to talk about the murder of Nollie Bishop. Gallo asked that Cruz be transported to homicide headquarters. When he was asked for identification, Cruz presented his own driver's license and a driver's license in the name of Dennis Bishop.

Officers George Ghee and Milton McCall were assigned to transport Cruz to homicide. Enroute they stopped at 219 North Broad Street to pick up the bench warrant for Cruz. While there, Cruz angrily told the two officers that "she is sending me down and I'm going to make sure she goes with me." He stated further that a couple of years before he grabbed a guy around the neck while Glenda Swift stabbed the man repeatedly with an ice pick.

The two officers then took Cruz to the Police Administration Building where he gave a formal statement to Detective Gallo. Cruz said that, on the night of Bishop's killing, he and Swift were walking on Baynton Street when Bishop

jumped out of his parked car and came toward Cruz shouting obscenities. Cruz grabbed Bishop and held him around the neck while Swift stabbed him. Cruz then threw the body into the back seat of Bishop's car. Cruz gave Detective Gallo a Keystone Automobile Club card, a Social Security card, and a motor vehicle owner's card, which all bore the name of Dennis Bishop. He explained he had done some work at Bishop's home prior to the murder at the direction of Bishop's wife. Sometime after the killing, he rented a basement apartment in the Bishop home. He stated that, during that time, he took from the mail items of identification in the name of Dennis Bishop and kept them because he liked the name.

◼ Viewing the entire record in the light most favorable to the Commonwealth as verdict winner, and accepting as true all of the Commonwealth's evidence, as well as all reasonable inferences therefrom, see *Commonwealth v. Tate*, 485 Pa. 180, 182, 401 A.2d 353, 354 (1979), we conclude the jury could reasonably have found this evidence sufficient to prove Cruz's guilt of murder of the third degree beyond a reasonable doubt. Cruz admitted his participation in the crime to law enforcement officials on two occasions. His two accounts of the crime were consistent with each other. Moreover, the assorted identification cards in Cruz's possession linked him circumstantially to the deceased. Clearly, this evidence is sufficient to sustain Cruz's conviction. See *Commonwealth v. Starks*, 479 Pa. 51, 387 A.2d 829 (1978); *Commonwealth v. Palmer*, 448 Pa. 282, 292 A.2d 921 (1972).

◼ As to the asserted trial errors, Cruz first argues the court erred in permitting hearsay testimony as to the contents of a police radio call. Officer John Bailey testified that, on the evening of July 25, 1977, he "responded to a call of a disturbance, man with a gun  . . . ." The court sustained defense counsel's objection to the statement but overruled counsel's motion to strike and his motion to instruct the jury to ignore the testimony. In view of the purpose for which the out-of-court statement was offered, it was admissible and, thus, the court did not err in refusing counsel's motions.

■ The police radio call was offered to show how Officer Bailey happened to come into contact with Herbert Washington on the evening of July 25, 1977 and, thereafter, with Cruz at the 14th police district station where Bailey inadvertently prompted Cruz to make his first incriminating statement. The radio call was not introduced to prove there was a man with a gun at 5442 Wakefield Street. Moreover, the call was irrelevant to the Commonwealth's case against Cruz and its contents did not incriminate Cruz in any way. It is well-established that an out-of-court statement offered to explain a course of conduct is not hearsay. See *Commonwealth v. Sampson*, 454 Pa. 215, 311 A.2d 624 (1973); *Commonwealth v. Ryan*, 253 Pa.Super. 92, 384 A.2d 1243 (1978); *Commonwealth v. Tselepis*, 198 Pa.Super. 449, 181 A.2d 710 (1962), *allocatur denied.*

■ Next, Cruz argues the trial court erred in failing to instruct the jury to disregard testimony concerning a bench warrant for Cruz in an unrelated matter. Officer James Greer testified during direct examination that he transported Glenda Jean Swift and Jose Cruz to the 14th police district as a result of a complaint made by Swift. During cross-examination, defense counsel inquired repeatedly as to the nature of the complaint, and Officer Greer finally answered that he wanted to determine if there was an outstanding bench warrant for Cruz. Since the testimony was first elicited by defense counsel, Cruz does not argue that it was improperly admitted but, instead, that the court should have given an instruction *sua sponte* to the effect that the testimony was admitted only to show why Cruz was initially arrested. However, defense counsel did not request any such limiting instruction at any time during the trial. Therefore, this claim is waived. *Commonwealth v. Glass*, 486 Pa. 334, 405 A.2d 1236 (1979); *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

Cruz next contends the trial court erred in permitting the Commonwealth to introduce an out-of-court statement by Officer Ghee during redirect examination. Officer Ghee testified during direct that Cruz made an inculpatory state-

ment in the presence of Ghee and another officer while he was being transported to homicide headquarters. Ghee testified that Cruz stated the woman he was with stabbed the victim with an ice pick "so fast I had to move my arm, because she almost stabbed me in the arm." During cross-examination, it was established that Officer Ghee had given a statement about what Cruz had said to Homicide Detective Gallo. A copy of that statement was provided for the witness to review. Thereafter, defense counsel established that Officer Ghee's statement to Detective Gallo did not include the fact that Cruz said he had to move his arm because of the woman's rapid stabs. At this point, the Commonwealth requested the entire statement be read and, over defense counsel's objection, the court ruled it admissible as a prior consonant statement. Cruz claims the prior statement was inadmissible hearsay and, therefore, its admission was error.

It is well-established that a trial court may, in its discretion, permit introduction of a prior consistent statement of a witness in order to rebut a claim of recent fabrication in the witness's trial testimony. *Commonwealth v. Gaddy*, 468 Pa. 303, 362 A.2d 217 (1976); *Commonwealth v. Wilson*, 394 Pa. 588, 148 A.2d 234 (1959), *cert. denied*, 361 U.S. 844, 80 S.Ct. 97, 4 L.Ed.2d 82 (1959). Here, by bringing out the fact that a portion of Officer Ghee's trial testimony was not contained in his statement to Detective Gallo, defense counsel clearly advanced recent fabrication. Therefore, it was not error for the court to permit the Commonwealth to rebut the claim of recent fabrication by introducing Officer Ghee's prior consistent statement. Moreover, since the statement at issue was first employed by defense counsel in an effort to impeach the Commonwealth's witness, the court properly exercised its discretion in admitting the entire statement to show there was no inconsistency and no other difference between Officer Ghee's out-of-court statement and his trial testimony. See *Commonwealth v. Marino*, 213 Pa.Super. 88, 245 A.2d 868 (1968), *cert. denied*, 395 U.S. 983, 89 S.Ct. 2145, 23 L.Ed.2d 771, *rehearing denied*, 396 U.S. 871, 90 S.Ct. 46, 24 L.Ed.2d 129 (1969).

■ Cruz next complains his inculpatory statement to Detective Gallo should not have been admitted into evidence since he was intoxicated at the time the statement was made and it was, therefore, involuntary. This issue was resolved against Cruz by the suppression court which found Cruz was not under the influence of drugs, narcotics, or alcohol during the time he was in custody. The suppression court's findings may not be disturbed on appeal if they are supported by the record. In making this determination, we must consider only the evidence presented by the Commonwealth and so much of the evidence for the defense which remains uncontradicted. *Commonwealth v. O'Bryant*, 479 Pa. 534, 388 A.2d 1059 (1978).

■ At the suppression hearing, Cruz testified he had been drinking for two days prior to his arrest and claimed to have no recollection of being in the Police Administration Building or giving a statement there. However, Cruz's testimony was contradicted by four Commonwealth witnesses who stated Cruz appeared normal and not under the influence of intoxicants after his arrest. Since there is ample support in the record for the suppression court's finding of voluntariness, Cruz's statement was properly admitted at trial.

Finally, Cruz contends the trial court erred in restricting defense counsel's cross-examination of Detective Gallo. The facts pertinent to this issue are as follows: The Commonwealth's case against Cruz was based on a co-conspirator theory. He was never accused of being the actual stabber. Further, Cruz's confession had named Glenda Jean Swift, his companion at the time of the arrest, as Nollie Bishop's stabber. During cross-examination, defense counsel asked Detective Gallo if he had ever obtained an arrest warrant for Swift in connection with this case and was told he had not. During redirect, the Commonwealth asked why Swift had never been arrested, and Detective Gallo stated the investigation showed Swift was not involved in Bishop's murder. During recross-examination, Detective Gallo testified he believed part of Cruz's confession and stated further

568

that he did not believe Cruz was Bishop's stabber. He was then asked by defense counsel who he believed stabbed Nollie Bishop. The Commonwealth's objection was sustained following argument by counsel in chambers. Cruz maintains the court erred in refusing to allow this line of cross-examination and argues Detective Gallo's belief as to the stabber's identity was admissible as expert opinion.

It is clear that Detective Gallo's opinion as to the actual stabber would not have qualified as expert opinion inasmuch as it did not call for special skills beyond a layman's reach. See *Commonwealth v. Crawford*, 468 Pa. 565, 364 A.2d 660 (1976); *Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976). Further, we are persuaded by the trial court's reason for limiting cross-examination into this area, *viz.* that Jose Cruz, and no one else, was on trial for the murder of Nollie Bishop. Thus, Detective Gallo's opinion as to the identity of Cruz's co-conspirator was irrelevant to the question of Cruz's guilt. It would only have diverted the jury's attention from the task of assessing Cruz's guilt.

Judgment of sentence affirmed.

ROBERTS, J., concurs in the result.