J-A30031-18

NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DAWN NICHELLE JONES, | : | |
| | : | |
| Appellant | : | No. 124 WDA 2018 |

Appeal from the Judgment of Sentence December 19, 2017
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0010837-2016

BEFORE:     SHOGAN, J., KUNSELMAN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:              FILED MARCH 19, 2019

Dawn Nichelle Jones (Appellant) appeals from the judgment of sentence imposed after she was found guilty of driving under the influence (DUI) of alcohol, driving without a license, and possessing an open alcoholic beverage container in a motor vehicle.  Upon review, we vacate and remand for a new trial.

On June 17, 2016, around 5:00 p.m., Officers Michael Guzma and Brandy Harcha of the McKees Rocks Police Department received a dispatch regarding a possibly intoxicated female in a PNC Bank drive-through.[1]  N.T.,

_____

[1] Pertinent to this appeal, Officers Guzma and Harcha provided testimony regarding the contents of the 911 call since the caller, a PNC Bank teller, was not present at trial.  Appellant's counsel objected to this testimony as hearsay.  N.T., 3/12/2017, at 6 ("I have to object to any hearsay statements
(Footnote Continued Next Page)

*Retired Senior Judge assigned to the Superior Court.

5/12/2017 at 6.  The dispatch relayed that the vehicle was seen driving off in the direction of Bell Avenue.  Id.  The officers responded from the police station, which is located on Bell Avenue, and encountered a vehicle matching the description given in the dispatch approximately 30 seconds to one minute later, parked in a "no parking" loading zone behind a shopping center.[2]  Id. at 6-7, 12, 15.

The officers approached the vehicle and attempted to make contact with the female occupant, later identified as Appellant, who was sitting in the driver's seat, slumped over the steering wheel.  Id. at 7.  Officer Guzma observed an empty bottle of vodka, bottle of ginger ale, and prescription drug bottles on the passenger's side of the vehicle.  Id. at 9.  Officer Guzma testified that he and Officer Harcha eventually made contact with Appellant, who had "bloodshot, glassy eyes, and there was an odor of an alcoholic beverage on her breath and person."  Id. at 7.  When asked to step out of

(Footnote Continued) ————————————

by the PNC teller.").  The trial court permitted the testimony for the "limited purpose" of why the officers "responded to the scene for the investigation," otherwise known as the course of conduct exception to the hearsay rule.  Id. at 6.  See also Commonwealth v. Carroll, 513 A.2d 1069, 1071 (Pa. Super. 1986) ("[A]n out-of-court statement offered to explain a course of conduct is not hearsay.").

[2] Ken Skepanski, a tow truck driver who was contacted by police to tow Appellant's vehicle, testified that he arrived to the scene around 5:30 p.m. and observed Appellant's vehicle behind the shopping center.  N.T., 10/27/2017, at 7. Skepanski stated that the vehicle "wasn't in a spot. It was in the aisle."  Id.

the vehicle, Appellant "nearly fell into [sic] the roadway." Id. at 8. Appellant consented to several field sobriety tests, all of which she failed. Id. 8-9. Both officers opined that Appellant was too intoxicated to operate a vehicle safely.[3] Id. at 10, 18.

Based upon the foregoing, Appellant was charged with, inter alia, DUI, driving without a license,[4] and possessing an open alcoholic beverage container in a motor vehicle. Appellant eventually proceeded to a non-jury trial and, following three days[5] of testimony, she was found guilty of the aforementioned offenses. On December 19, 2017, Appellant was sentenced to six months' probation and was directed to follow the recommendations of her drug and alcohol assessment, complete highway safety school and pay two fines.

_____

[3] Contrary to the testimony elicited by the Commonwealth that the officers located Appellant's vehicle around 5:00 p.m., Appellant testified that police encountered her at 8:00 a.m., after she finished working a double shift. N.T., 5/12/2017, at 23. Appellant testified it was her friend, William Pettus, who drove the vehicle. Id. Appellant "disputed the [officers'] testimony that the vehicle was parked illegally behind the [shopping] plaza and stated the vehicle was in front of the PNC Bank. She said that Mr. Pettus walked to the shopping plaza across the street and she remained in the vehicle waiting for the bank to open." Trial Court Opinion, 5/24/2018, at 3. Corroborating Appellant's version of events, Mr. Pettus testified that he drove Appellant to the bank "at 8:00 a.m.[] and left her in the vehicle to go play some lottery numbers at the beer distributor. When he returned twenty to thirty minutes later, both [Appellant] and the vehicle were gone." Id.

[4] The officers did a license check, which revealed that Appellant's license was suspended. N.T., 5/12/2017, at 9.

[5] Appellant's trial was twice continued to accommodate testifying witnesses.

Appellant timely filed a notice of appeal on January 18, 2018.[6]    On appeal, Appellant sets forth the following issues for this Court's consideration:

1. Whether the evidence was insufficient to find that [Appellant] drove or was in actual physical control of a vehicle where there was no substantive evidence that [Appellant] operated the vehicle in question prior to being approached by police officers?

2. Whether the trial court abused its discretion in relying on the substance of an inadmissible hearsay statement to convict [Appellant] of DUI and driving without a license, when the statement had only been admitted into evidence to show the officers' course of conduct?

Appellant's Brief at 5 (unnecessary capitalization and suggested answers omitted).

We begin with Appellant's sufficiency challenge.    Appellant contends "the evidence is wholly insufficient to show that [Appellant] drove or was in actual physical control of her vehicle."  Id. at 17.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder.   In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.   The Commonwealth may sustain its burden of

_____

[6] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Further, in viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the court must give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

Commonwealth v. Harden, 103 A.3d 107, 111 (Pa. Super. 2014) (internal quotation marks and citations omitted).

"Furthermore, [i]n evaluating the sufficiency of the evidence, we do not review a diminished record. Rather, the law is clear that we are required to consider all evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings are correct." Commonwealth v. Gray, 867 A.2d 560, 567 (Pa. Super. 2005) (citation and quotation marks omitted; bracket in original). Consequently, our review of Appellant's sufficiency challenge is unaffected by our resolution of the evidentiary issue raised by Appellant, which we address infra. See Commonwealth v. Koch, 39 A.3d 996 (Pa. Super. 2011) (concluding that while the evidence was sufficient based upon, inter alia, improperly admitted text messages, a new trial was warranted because the text messages were inadmissible hearsay and the admission of the text messages was not harmless error).

In this case, Appellant was charged with DUI- general impairment. "An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S. § 3802(a)(1).

> The term "operate" requires evidence of actual physical control of the vehicle to be determined based upon the totality of the circumstances. Our precedent indicates that a combination of the following factors is required in determining whether a person had "actual physical control'" of an automobile: the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle. The Commonwealth can establish that a defendant had "actual physical control" of a vehicle through wholly circumstantial evidence. See also Commonwealth v. Johnson, 833 A.2d 260 (Pa. Super. 2003) (collecting cases standing for proposition that Commonwealth may establish by totality of circumstances, defendant was driving, operating or in actual physical control of motor vehicle). Furthermore, a police officer may utilize both his experience and personal observations to render an opinion as to whether a person is intoxicated.

Commonwealth v. Williams, 941 A.2d 14, 27 (Pa. Super. 2008) (some quotation marks and citations omitted). "The term 'operate' requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion." Johnson, 833 A.2d at 263 (citation omitted).

Viewing the evidence introduced at trial in the light most favorable to the Commonwealth, we find the evidence sufficient to establish that Appellant was in actual physical control of her vehicle during the relevant

time. As set forth supra, at Appellant's non-jury trial, Officer Guzma testified that a PNC Bank teller had called 911 and "reported that there was possibly an intoxicated female in [the Bank's] drive-through." N.T., 5/12/2017, at 6. Officer Guzma stated that the caller had given "a partial plate and said that [the vehicle] took off in the direction of Bell Avenue." Id. Officer Guzma, along with Officer Harcha "responded from the [police] station, which is located on Bell Avenue, and located a vehicle matching the description given and the license plate. It was parked in a no parking zone behind the shopping center." Id. at 6-7. The woman they encountered, later identified as Appellant, was found slumped over the steering wheel in the driver's seat of the parked vehicle, and matched the description given in the 911 call.[7] Id. at 7.

Upon approaching the vehicle, Officer Guzma saw, inter alia, an empty bottle of vodka and prescription drug bottles on the passenger's side of the vehicle. Upon making contact with Appellant, Officer Guzma observed

---

[7] Officer Guzma's testimony was corroborated by Officer Harcha, who testified as follows:

> We received a phone call for a female falling asleep in the drive-through at PNC Bank. A partial plate was given to officers along with a description of the vehicle and the female and that it was last seen headed towards Bell Avenue, which is where our police station was located. At th[at] time[,] we exited the police station, located the vehicle behind the [shopping center,] and came into contact with the driver, [Appellant].

N.T., 5/12/2017, at 15.

Appellant's bloodshot, glassy eyes, and an odor of alcohol emanating from her person. Id. at 9. Officer Harcha testified that no one other than Appellant was "directly by the car." Id. at 16. Eventually, the responding tow truck driver, Mr. Skepanski, received the keys to Appellant's car from the responding officers and towed the vehicle. N.T., 10/27/2017, at 7. Based upon the foregoing, the evidence was sufficient to establish that Appellant, who was observed falling asleep at the wheel at the PNC Bank before driving off, and whom police encountered passed out and visibly intoxicated when they located Appellant in the driver's seat slumped over the steering wheel, was in physical control of her vehicle. No relief is due.

We now turn to Appellant's claim that the trial court abused its discretion when it considered hearsay statements, accepted by the trial court for the limited purpose of explaining the officers' course of conduct, for substantive purposes. Appellant's Brief at 12. We review this issue mindful of the following. "Matters within the trial court's discretion are reviewed on appeal under a deferential standard, and any such rulings or determinations will not be disturbed short of a finding that the trial court committed a clear abuse of discretion or an error of law controlling the outcome of the case." Commonwealth v. Koch, 106 A.3d 705, 711 (Pa. 2014) (quotation marks omitted).

> An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of

bias, prejudice, ill-will or partiality, as shown by the evidence of record.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). Hearsay testimony is per se inadmissible in this Commonwealth, except as provided in the Pennsylvania Rules of Evidence, by other rules prescribed by the Pennsylvania Supreme Court, or by statute. On the other hand, evidence that would constitute inadmissible hearsay if offered to for one purpose may be admitted for another purpose[.] An out-of-court statement offered to explain a course of conduct is not hearsay.

Commonwealth v. Dent, 837 A.2d 571, 577 (Pa. Super. 2003) (some quotation marks and citations omitted). See also Commonwealth v. Cruz, 414 A.2d 1032, 1035 (Pa. 1980) (Pointing out that contents of a police radio call are admissible as an out-of-court statement offered to explain the officer's course of conduct).

With respect to certain hearsay statements, our Supreme Court has explained that

the distinction can be subtle between a statement that, if admitted, would serve as affirmative and substantive evidence of the accused's guilt, and non-hearsay that may be admitted to establish some other aspect of a case, such as motive or a witness's relevant course of conduct. On appeal, reviewing courts should be wary of proffered bases for admission that may be pretexts for getting fact-bound evidence admitted for a substantive purpose.

Koch, 106 A.3d at 715.

As set forth in more detail supra, at Appellant's non-jury trial, the Commonwealth introduced details of a 911 call made by a PNC Bank teller,

who was not present at trial. Because the teller did not attend trial, the Commonwealth elicited this information from the two responding officers. N.T., 3/12/2017, at 6. The defense objected to the introduction of this testimony as inadmissible hearsay. Id. The trial court ultimately allowed the testimony, finding the contents of the call could be presented to explain "why [Officer Guzma] responded to the scene for the investigation, for that limited purpose."[8] Id.

The trial proceeded and following closing arguments, the trial court found Appellant guilty of the aforementioned offenses. When announcing its verdict, the trial court stated: "I think the Commonwealth has met [its] burden with respect to the fact that [Appellant] was the person behind the wheel at the PNC [Bank] and was the person behind the wheel when they encountered her car 30 seconds later." N.T., 10/27/2017, at 29. Appellant contends it is this statement by the trial court that makes it clear that the court, while admitting the testimony under the course-of-conduct exception, erroneously considered the contents of the call for substantive purposes. Appellant's Brief at 29-30. The Commonwealth concedes this fact, stating

_____

[8] We question whether the testimony of the 911 call fell within the course of conduct exception. In this case, the crucial issue was whether Appellant, who was found by Officers passed out in the driver's seat of her parked car, had driven the vehicle while intoxicated. The 911 call and the Officers' subsequent dispatch to locate Appellant's vehicle was inconsequential to this issue. Nevertheless, because Appellant did not raise this claim on appeal, we decline to address it further.

the trial court "despite ruling that the content of the 911 call was limited to demonstrating the officers' course of conduct, appeared to have actually relied on it substantively in reaching [its] verdict." Commonwealth's Brief at 23. In its 1925(a) opinion, the trial court stated that Appellant's "claim that this court relied on a hearsay statement in coming to the verdict is just false." Trial Court Opinion, 5/24/2018, at 4. The trial court did not expound on why Appellant's assertion was incorrect.

Upon review, we agree with Appellant that the trial court's statement shows that the court considered the 911 call for substantive purposes. Initially, we note, "the testimony challenged herein constitutes inadmissible hearsay." Dent, 837 A.2d at 579. Over Appellant's objection, the trial court allowed the officers to testify about the contents of the call to explain the officers' course of conduct in leaving the police station to search for a particular vehicle, and conducting an investigation when the officers happened upon the vehicle behind the shopping center. To that end, we are cognizant that

> [i]n criminal cases, an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct. His testimony that he acted "upon information received," or words to that effect, should be sufficient.

Id. at 580.

In this case, the officers recounted the statements made by the PNC Bank teller during the 911 call in great detail. This included a description of the vehicle and its driver, as well as what the 911 caller perceived, i.e., that the driver was possibly intoxicated. Such testimony, when relied upon for substantive purposes, goes beyond the limited purpose established by the course of conduct exception. See id. at 581 ("'Course of conduct' narratives often include out-of-court statements that are not offered for the truth of the matter asserted therein; frequently, the statements are also non-essential to the prosecution's case, or the declarant testifies at trial, or the defendant opened the door to the admission of the evidence, or the admission of the statements was deemed harmless error.").

By finding that Appellant "was the person behind the wheel" at the PNC Bank drive-through, it is clear to this Court that the trial court viewed the statements outside the lens of explaining why the officers left the police station in search of Appellant's vehicle. Instead, the trial court's statement implied that it considered these statements for the truth of the matter asserted; that there was an impaired woman behind the wheel of her vehicle at a PNC drive-through who was seen driving away. This is exactly what the course of conduct hearsay exception prohibits. Thus, we find the trial court abused its discretion. However, our inquiry does not end there.

> The sole question remaining is whether this abuse of discretion warrants a new trial. A new trial is mandated where the error is not harmless beyond a reasonable doubt. As we explained in Commonwealth v. Thornton, [431 A.2d 248 (Pa.

1981)] "[t]he doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt. Its purpose is premised on the well-settled proposition that '[a] defendant is entitled to a fair trial but not a perfect one.'" In Commonwealth v. Moore, 937 A.2d 1062 (Pa. 2007), our highest court reaffirmed that an error may be considered harmless only when the Commonwealth proves beyond a reasonable doubt that the error could not have contributed to the verdict. Whenever there is a "reasonable possibility" that an error "could have contributed to the verdict," the error is not harmless.

Koch, 39 A.3d at 1006 (some citations omitted). See also Commonwealth v. Wright, 961 A.2d 119, 143 (Pa. 2008) ("[A]n error cannot be harmless if there is a reasonable possibility the error might have contributed to the conviction."). "The Commonwealth has the burden of proving harmless error beyond a reasonable doubt." Id.

This burden is satisfied when the Commonwealth is able to show that: (1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial affect of the error so insignificant by comparison that the error could not have contributed to the verdict.

Commonwealth v. Laich, 777 A.2d 1057, 1062–63 (Pa. 2001) (citation omitted).

In this case, while the Commonwealth does not per se argue harmless error, the Commonwealth contends that any error made by the trial court was inconsequential because (1) the course of conduct "restriction on the 911 call was not required under the rule against hearsay," since the call was

admissible under the present sense impression exception; and (2) there was enough circumstantial evidence presented "irrespective of anything contained in the 911 call." Commonwealth's Brief at 23-24. We are not persuaded by these arguments.

First, the Commonwealth concedes that the trial court relied on the contents of the 911 call for substantive purposes when announcing its verdict, which our own review of the record confirms. Thus, as a prefatory matter, we find the trial court's reliance on these statements for substantive purposes contributed to Appellant's conviction. Secondly, we disagree with the Commonwealth's argument that this Court could find the 911 call was admissible for substantive purposes under the present sense impression exception. Commonwealth's Brief at 23. "The present sense impression exception to the hearsay rule permits testimony of declarations concerning conditions or non-exciting events observed by the declarant." Commonwealth v. Cunningham, 805 A.2d 566, 573 (Pa. Super. 2002); Pa.R.E. 803(1). Crucial to the present sense impression exception is the timing of the statements. "The trustworthiness of the statement arises from its timing. The requirement of contemporaneousness, or near contemporaneousness, reduces the chance of premeditated prevarication or loss of memory." Pa.R.E. 803(1), comment. Here, there was no testimony

regarding whether the statements by the PNC Bank teller were made at or around the time she perceived Appellant in her vehicle at the drive-through.[9]

Lastly, we disagree that there was sufficient circumstantial evidence to establish that Appellant was in physical control of her vehicle without consideration of the 911 call for substantive purposes. In reviewing the evidence, and omitting the contents of the 911 call, the record reflects that the Officers found Appellant's vehicle behind a shopping center in a "no parking" loading zone. While there was testimony introduced that Appellant's vehicle was not in a parking spot, but rather in an "aisle," there was no evidence introduced that the area in which the vehicle was located was frequently travelled or that it was parked in such a way as to impede traffic. Thus, the testimony regarding the location of the vehicle did not definitely or even circumstantially establish that Appellant's car could not have been parked where it was for a significant period of time. Additionally, there was no testimony that the car was warm to the touch, the keys were in the ignition or any other indicia that the vehicle had recently been driven. In light of the foregoing, because the Commonwealth has failed to convince

_____

[9] Moreover, we find it inherently unfair to determine for the first time on appeal that the trial court was allowed to consider the statements as substantive evidence when Appellant relied on the trial court's ruling that the statements pertaining to the 911 call were to be used to explain course of conduct only. Had Appellant known these statements could be used for substantive purposes, she may have chosen to proceed differently.

this Court that the trial court's error was harmless, we find a new trial is warranted.

Judgment of sentence reversed. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/19/2019