J-A05030-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN LEWIS RUSH | : | |
| | : | |
| Appellant | : | No. 339 WDA 2018 |

Appeal from the PCRA Order February 9, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0002090-2014

BEFORE:  GANTMAN, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 10, 2019**

John Lewis Rush ("Appellant") appeals from the order denying his petition for relief filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546.  We affirm.

Underlying this appeal are Appellant's December 5, 2014 "convictions of four counts of aggravated assault and one count each of disarming a law enforcement officer; torture of a police animal; cruelty to animals; resisting arrest; escape; possession of a weapon; and flight to avoid apprehension, trial, or punishment."[1]  ***Commonwealth v. Rush***, 162 A.3d 530, 534 (Pa.

_____

[1] 18 Pa.C.S. §§ 2702(a)(3), 5104.1(a), 5511.2(b), 5511(a)(2.1)(i)(A), 5104, 5121(a), 907(b), and 5126(a), respectively.

On direct appeal, a panel of this Court set forth the trial court's factual summary of this case.  ***See Commonwealth v. Rush***, 162 A.3d 530 (Pa. Super. 2017) (quoting Trial Court Opinion, 2/16/16, at 3–4, 6–10).

Super. 2017). The trial court sentenced Appellant on March 10, 2015, to incarceration for an aggregate term of fourteen years and ten months to thirty-six years and six months, followed by eight years of probation. *Id.* at 536. Appellant filed post-sentence motions, which the trial court denied on April 16, 2015. *Id.* Appellant timely filed a notice of appeal. We affirmed the judgment of sentence, and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal. *Id.* at 546, *appeal denied*, 170 A.3d 1049 (Pa. 2017).

Appellant filed a *pro se* petition for PCRA relief on November 2, 2017. Following the appointment of counsel, who filed a ***Turner***/***Finley***[2] "no merit" letter, the PCRA court permitted counsel to withdraw and dismissed Appellant's petition. Order, 1/3/18; Order, 2/9/18. Appellant filed a timely *pro se* notice of appeal and a *pro se* statement of errors pursuant to Pa.R.A.P. 1925(b). We instructed the trial court to conduct a ***Grazier***[3] hearing to determine if Appellant wanted to proceed *pro se*. Order, 3/23/18. The trial court appointed standby counsel and conducted a hearing, at which Appellant requested to proceed with appointed counsel. Order, 4/9/18; N.T., 4/20/18,

---

[2] ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988); ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[3] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

at 3. Counsel filed an amended statement of errors on July 26, 2018, and the

PCRA court filed an opinion on August 22, 2018.

On appeal, Appellant raises the following questions for our

consideration:

> 1. Whether trial counsel was ineffective for failing to request a **Kloiber**[4] instruction where Deputy John Herb did not have a good opportunity to view the suspect and his identification was qualified by inconsistencies between the description of the suspect and [Appellant's] appearance?
>
> 2. Whether direct appeal counsel was ineffective for failing to raise a challenge to the [trial c]ourt's rulings on statements attributed to Courtney Pitts that allowed an out of court identification of [Appellant]?
>
> 3. Whether trial counsel was ineffective for failing to litigate a motion for change of venue when the record shows that multiple jurors expressed knowledge of the case and sensitivity to dogs?

Appellant's Brief at 3.[5]

Our standard of review of an order denying PCRA relief is whether the

record supports the PCRA court's determination and whether the PCRA court's

determination is free of legal error. **Commonwealth v. Staton**, 184 A.3d

---

[4] **Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954). A **Kloiber** charge instructs the jury that an eyewitness's identification should be viewed with caution where the eyewitness: (1) did not have an opportunity to clearly view the defendant; (2) equivocated on the identification of the defendant; or (3) had a problem making an identification in the past. **Commonwealth v. Jones**, 954 A.2d 1194, 1198 (Pa. Super. 2008).

[5] We note that Appellant's brief does not include a summary of the argument, in violation of Pa.R.A.P. 2111(a)(6) and 2118. Because this omission does not hamper our review, we decline to quash.

949 (Pa. 2018). We consider the record in the light most favorable to the prevailing party in the PCRA court. *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015). We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. *Commonwealth v. Rigg*, 84 A.3d 1080, 1084 (Pa. Super. 2014).

Appellant's issues present claims of ineffective assistance of counsel. A PCRA petitioner alleging ineffectiveness of his counsel will be granted relief only if he is able to prove that, "in the circumstances of [his] particular case," the truth-determining process was undermined to the extent "that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). The law presumes that counsel was effective, and it is the petitioner's burden to prove the contrary. *Commonwealth v. Perez*, 103 A.3d 344, 348 (Pa. Super. 2014). To prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must plead and prove by a preponderance of the evidence that: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for acting or failing to act; and (3) the petitioner suffered resulting prejudice. *Commonwealth v. Baumhammers*, 92 A.3d 708, 719 (Pa. 2014) (citing *Commonwealth v. Pierce*, 527 A.2d 973, 975–976 (Pa. 1987)). A petitioner must prove all three factors of the *Pierce* test or the claim fails. *Commonwealth v. Busanet*, 54 A.3d 35, 45 (Pa. 2012). In addition, on appeal, a petitioner must

adequately discuss all three factors of the **Pierce** test, or the appellate court will reject the claim. **Commonwealth v. Reyes–Rodriguez**, 111 A.3d 775, 780 (Pa. Super. 2015) (citation omitted). Counsel will not be deemed ineffective for failing to assert a meritless claim. **Commonwealth v. Roney**, 79 A.3d 595, 604 (Pa. 2013). Moreover:

> to satisfy the prejudice prong, it must be demonstrated that, absent counsel's conduct, there is a reasonable probability that the outcome of the proceedings would have been different. **Commonwealth v. Charleston**, 94 A.3d 1012, 1019 (Pa.Super.2014). If it has not been demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone, and the court need not first decide whether the first and second prongs have been met.

**Perez**, 103 A.3d at 348.

Appellant first maintains that trial counsel was ineffective for failing to request a jury instruction pursuant to **Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954). Appellant's Brief at 10. Appellant argues "the trial testimony demonstrates that [Allegheny County] Deputy [Sheriff John] Herb was not able to positively [identify] the suspect because he did not have a clear view of the person and his description of the suspect was qualified by multiple inconsistencies." **Id.** at 12. According to Appellant, his **Kloiber** argument has arguable merit because "Deputy Herb acknowledged that he could not positively [identify] the suspect." **Id.** Appellant also contends there was "no reasonable strategic basis for failing to request the cautionary instruction" given that trial counsel "made a great effort to . . . advance the defense that

Deputy Herb did not encounter . . . Appellant on the street." *Id.* Finally,

Appellant argues that he "was prejudiced by counsel's error" because the jury

was not instructed to receive Deputy Herb's testimony with caution. *Id.* at

12–13.

The PCRA court rejected this claim with the following analysis:

> Where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the [c]ourt should warn the jury that the testimony as to identity must be received with caution.

*Commonwealth v. Kloiber*, 106 A.2d 820, 826–[8]27 (Pa. 1954). Appellant asserts that Deputy Herb "did not have a good opportunity to view Appellant and the Detective's identification was qualified by inconsistences between the description of the suspect and Appellant's appearance." To the contrary, Deputy Herb was part of a unit specifically assigned to locate Appellant on the night in question. He and his unit had been briefed on Appellant's appearance and attire as well as his likely destination. Upon observing Appellant, Deputy Herb initiated a conversation with Appellant from which Appellant fled. Deputy Herb radioed his unit regarding this encounter with Appellant, the individual who was being sought that night. Ultimately, Appellant was located in the basement of a nearby building. Deputy Herb consistently testified that Appellant was a light[-]skinned black male between 5'9" and 6'1" in height. Deputy Herb observed Appellant both on the street and in the basement, and consistently identified Appellant as his assailant.

> A *Kloiber* instruction is warranted:

> where a witness: (1) was not in a position to clearly observe the defendant, or is not positive as to identity; (2) equivocated on the identification; or (3) failed to identify the defendant on prior occasions.

> *Commonwealth v. Ali*, 10 A.3d 282, 303 (Pa. 2010). As none of these criteria applies, Appellant was not entitled to a *Kloiber* instruction[,] and counsel was not ineffective for failing to request one.

PCRA Court Opinion, 8/22/18, at 4 (brackets in original omitted). We agree with the PCRA court that none of these circumstances existed in this case.

At trial, Deputy Herb testified that, on January 28, 2014, he was a member of the fugitive squad assigned to locate Appellant and serve him with an arrest warrant for a violation of his probation. N.T., 12/8/14, at 50–52. Deputy Herb and the other squad members received information on January 28, 2014, that Appellant was homeless and walking to a residence in the Lawrenceville section of Pittsburgh. *Id.* at 52. Deputy Herb and the squad members began searching the Lawrenceville area; they had "a picture of [Appellant] and a rough estimate on height and weight." *Id.* at 53.

On Butler Street, Deputy Herb "noticed a man roughly the same height; [who] appeared to be homeless carrying garbage bags; [wearing] a lot of layers of clothing[.]" N.T., 12/8/14, at 53. Deputy Herb approached Appellant and asked his name; Appellant pulled down a mask or scarf, thereby exposing his face to Deputy Herb, and replied, "John." *Id.* at 54–55. Although Deputy Herb could not identify Appellant from a distance, upon seeing Appellant's face, Deputy Herb "knew it was [he]" and told Appellant he was under arrest. *Id.* at 55. Deputy Herb described the physical altercation that then occurred between himself and Appellant. *Id.* at 56–60. Eventually, Appellant fled and

a foot-chase ensued, during which Deputy Herb lost sight of Appellant. *Id.* at 60–62.

After receiving information about a 911 call regarding a suspicious person in a home at 3701 Butler Street, Deputy Herb and other law enforcement personnel went to the residence. N.T., 12/8/14, at 64–65, 91. Once the suspect was in custody,[6] Deputy Herb identified the suspect as Appellant. *Id.* at 65–66. Moreover, Deputy Herb identified Appellant in the courtroom as the man he encountered on January 28, 2014. *Id.* at 63–64. Contrary to Appellant's argument, Deputy Herb was unshaken in his identification of Appellant. *Id.* at 123.

Upon review, we conclude the record supports the PCRA court's determination that a *Kloiber* instruction was not warranted; we further conclude that its determination was without error. *Staton*, 184 A.3d 949. Considering the record in the light most favorable to the Commonwealth, the evidence was sufficient to establish that Deputy Herb (1) was in a position to observe Appellant clearly and was positive as to Appellant's identity; (2) did not equivocate on the identification; and (3) did not fail to identify Appellant on prior occasions. *Jones*, 954 A.2d at 1198. Any inconsistency between

---

[6] Officer Phillip Lerza and his police dog, Rocco, located Appellant in the basement of the residence. Appellant attacked Rocco with a knife, fatally wounding him. Appellant also attacked Officer Lerza and Officer Novak, injuring both of them. *Commonwealth v. Rush*, 162 A.3d 530, 535–536 (Pa. Super. 2017).

Deputy Herb's testimony regarding what Appellant was wearing when Deputy Herb first encountered Appellant on Butler Street and when Deputy Herb identified Appellant at 3701 Butler Street was for the jury to resolve. N.T., 12/8/14, at 55, 62, 67–68, 75, 78, 92, 106–107. Furthermore, any inconsistency between Deputy Herb's testimony and police reports regarding Appellant's location when Deputy Herb first encountered him was for the jury to resolve. *Id.* at 71, 73, 104–105, 113–114, 118–119, 121, Commonwealth Exhibit 3, Defense Exhibits D, F.[7]

In light of Deputy Herb's identification testimony, Appellant was not entitled to a *Kloiber* instruction. *See Commonwealth v. Upshur*, 764 A.2d 69, 77 (Pa. Super. 2000) (explaining that identification testimony need not be received with caution where it is positive, unshaken, and not weakened by a prior failure to identify). Thus, any such request would have been meritless. As trial counsel is not ineffective for failing to assert a meritless claim, *Roney*, 79 A.3d at 604, the PCRA Court properly denied relief on Appellant's *Kloiber*-based ineffectiveness claim.

Next, Appellant contends that direct-appeal counsel was ineffective for failing to challenge the trial court's admission of statements attributed to

---

[7] Likewise, we reject Appellant's argument regarding inconsistencies between Deputy Herb's testimony and the arrest warrant regarding Appellant's skin color and height. Such inconsistencies were also for the jury to resolve. N.T., 12/8/14, at 78, 80–82, 103, 119, Defense Exhibit B.

Appellant's girlfriend, Courtney Pitts ("Ms. Pitts"). Appellant's Brief at 13.[8]

The Commonwealth argues that Appellant has waived this ineffectiveness claim. According to the Commonwealth, "[Appellant] never made such an argument to the PCRA court, arguing in his PCRA petition only that his trial counsel was ineffective for failing to call Pitts to testify on his behalf and that this failure somehow allowed the prosecution to present hearsay testimony." Commonwealth's Brief at 18.

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Furthermore, the Pennsylvania Supreme Court has stressed that:

> a claim not raised in a PCRA petition cannot be raised for the first time on appeal. We have reasoned that [p]ermitting a PCRA petitioner to append new claims to the appeal already on review would wrongly subvert the time limitation and serial petition restrictions of the PCRA.

**Commonwealth v. Santiago**, 855 A.2d 682, 691 (Pa. 2004).

Our review of the record indicates that Appellant did, in fact, raise this ineffectiveness claim in his *pro se* PCRA petition. PCRA Petition, 11/2/17, at ¶ 7, item (8). Thus, we decline to find waiver.

This issue stems from the Commonwealth questioning Lieutenant Jack Kearney on rebuttal about information he learned from Ms. Pitts to explain

---

[8] Attorney Aaron D. Sontz of the Allegheny County Office of the Public Defender represented Appellant through the filing of post-sentence motions. Thereafter, Allegheny County Public Defender Attorney Elliot Howsie represented Appellant as direct appeal counsel.

how the police conducted the search for Appellant. N.T., 12/12/14, at 791–792. On appeal, Appellant acknowledges that out-of-court "statements offered to explain a course of police conduct are not hearsay." Appellant's Brief at 13 (citing *Commonwealth v. Cruz*, 414 A.2d 1032, 1035 (Pa. 1980)). Appellant argues, however, that the "course of conduct doctrine does not apply to out of court identifications." *Id.* According to Appellant, out-of-court identifications are admissible hearsay only if the declarant testifies at trial. *Id.* at 14 (citing Pa.R.E. 803.1). Appellant challenges the trial court's ruling as the admission of hearsay, not course-of-police-conduct evidence, because Ms. Pitts did not testify at trial. *Id.* at 14–15. In support of his position, Appellant relies on *Commonwealth v. Palsa*, 555 A.2d 808 (Pa. 1989), and *Commonwealth v. Dent*, 837 A.2d 571 (Pa. Super. 2003), which "analyzed the tension between 'course of conduct' testimony and inadmissible, hearsay identifications." Appellant's Brief at 14. Appellant concludes that his underlying argument has merit, direct appeal counsel lacked a reasonable strategic basis for failing to raise this claim, and, as a result, appellate counsel's ineffectiveness prejudiced Appellant. *Id.* at 15–16.

The PCRA court rejected this claim with the following analysis:

[Ms.] Pitts, Appellant's girlfriend at the time, was not called to testify regarding information she gave the police to assist them in identifying Appellant. However, her statements regarding Appellant's appearance, his location and objects in his possession were not admitted for the truth of the matter asserted, but rather to explain why Deputy Herb initially engaged Appellant.

- 11 -

Regardless, to prevail on an ineffective assistance of counsel claim, Appellant must show actual prejudice, "an actual adverse effect on the outcome of the proceedings." *Commonwealth v. Spotz*, 84 A.3d 294, 315 (Pa. 2014). Deputy Herb testified credibly that he had a photograph of Appellant prior to encountering him on the street. Deputy Herb further testified that he positively identified Appellant from that photograph after Appellant removed an article of clothing obscuring his face. Appellant identified himself to the Deputy as John. As Appellant fled, Deputy Herb fired his [T]aser at Appellant. Those [T]aser wires were recovered at the front doorway of the apartment building where Appellant was later located. As Appellant was being removed from the basement of the apartment building, Deputy Herb again positively identified him. Against this tidal wave of evidence, Appellant is unable to establish that any corroborative hearsay statements had an actual adverse effect on the proceedings.

PCRA Court Opinion, 8/22/18, at 4–5.

Upon review, we conclude the record supports the PCRA court's determination that Appellant failed to establish prejudice; we further conclude that this determination is free of legal error. **Staton**, 184 A.3d 949. The record indicates that the prosecutor was the first person to raise the relationship between Ms. Pitts and the challenged evidence; the prosecutor did so while questioning Appellant on cross-examination. N.T. (Excerpt), 12/11/14, at 44. When defense counsel objected to "[f]acts not in evidence," the prosecutor explained that she would "bring it in rebuttal," and the trial court overruled the objection. *Id.* at 44–45.

Testifying on rebuttal, Lieutenant Kearney explained that he first met Ms. Pitts at the Zone 3 police station on January 28, 2014. N.T. (Excerpt), 12/12/14, at 7, 13–14. Lieutenant Kearney interviewed Ms. Pitts and, based

on the information she provided, he "directed the detectives to split up and cover the geographic area from South Side from the Giant Eagle on Wharton . . . Street to a residence located . . . [at] 5120 Lotus Way in Lawrenceville." *Id.* at 14. Contrary to the prosecutor's intention and Appellant's suggestion, Lieutenant Kearney did **not** testify as to the particulars of Ms. Pitts' statements. Rather, he explained what actions he and the squad members took based on the information he received from Ms. Pitts. *Id.* at 13–15.

Furthermore, the record belies Appellant's statements that (1) Lieutenant Kearney "explained that he relayed the information he received from Ms. Pitts to Deputy Herb," and (2) "Detective Ninehouser's testimony also shows that he was aware of the description provided by Ms. Pitts." Appellant's Brief at 15. Lieutenant Kearney testified only that he interviewed Ms. Pitts and then directed the fugitive squad members where to search for Appellant based on the information he received from Ms. Pitts. N.T. (Excerpt), 12/12/14, at 13–15. Without any reference to a description of Appellant, Detective Ninehouser testified that the squad members received "information that [Appellant] would potentially be walking through the Lawrenceville area," so they "split up and went different directions." N.T., 12/11/14, at 513.

Here, the PCRA court determined that Appellant failed to establish prejudice, and we agree. Additionally, based on our review of the record, we conclude that Appellant's underlying argument lacks merit. Ms. Pitts provided

information regarding Appellant's appearance and location. However, nothing in the record indicates—and Appellant does not argue—that Ms. Pitts' out-of-court statements implicated Appellant in criminal conduct. Moreover, Lieutenant Kearney did not testify to the full and explicit statements given by Ms. Pitts. **Compare Palsa**, 555 A.2d at 119 (explaining that trooper testified to "full and explicit statements and "specific assertions of [defendant's] criminal conduct" made by informant in out-of-court statement to police), and **Dent**, 837 A.2d at 581 ("[Dent's] sister's out-of-court statement directly incriminated [Dent] and buttressed the Commonwealth's case for identifying [Dent] as the perpetrator of the offense.").[9] Indeed, none of the witnesses identified by Appellant as testifying to Ms. Pitts' statements actually did so. Considering the record in the light most favorable to the Commonwealth, Appellant's underlying claim lacks merit; therefore, his derivative claim that direct appeal counsel was ineffective fails.

Finally, Appellant argues that trial counsel was ineffective for failing to litigate a motion for change of venue. Appellant's Brief at 16. According to

---

[9] Unlike the case at hand, **Dent** involved a nonjury trial. The **Dent** Court ruled that "the identification statement of [Dent's] sister was inadmissible hearsay included in Officer Marko's testimony." **Dent**, 837 at 582. It concluded, however, that "the guilty verdict alone [was] insufficient to overcome the presumption that the court did not regard the prejudicial identification statement as substantive evidence of [Dent's] guilt." **Id.** Indeed, "the trial court demonstrated it had considered the police officer's testimony strictly as 'course of conduct' evidence." **Id.** at n.2.

Appellant, trial counsel filed a pretrial motion for change of venue based on prejudicial pretrial publicity, the passing of "Rocco's Law"[10] while Appellant's case was pending, and comments about the case by the district attorney, members of the judiciary, and the Pittsburgh mayor. *Id.* at 17–18. Trial counsel withdrew the motion after the trial court conducted a test panel *voir dire*. *Id.* at 18. Appellant contends that a change of venue was warranted because the record shows that "out of 67 interviewed jurists, 23 advised that they had knowledge of the case and 33 indicated that they were sensitive to dogs." *Id.* at 19 (citing Omnibus Pretrial Motion, 6/25/14, at Appendix A).[11] Appellant concludes that his underlying issue has arguable merit, trial counsel lacked a reasonable strategy for withdrawing the pretrial motion, and counsel's ineffectiveness resulted in prejudice. *Id.* at 18–19.

In response, the Commonwealth notes that Appellant's "trial did not take place until December 2014, meaning that the bulk of the complained-of publicity took place nearly a year prior to the jury being empaneled." Commonwealth's Brief at 25. Additionally, the Commonwealth points out that

---

[10] Rocco's Law, named for the police dog in this case, classified the hurting or killing of a police dog as a second-degree felony. 3 P.S. § 459-602(b).

[11] Appellant argues the fact that juror number six "cried when the defense played a recording in which the dog was heard in the background" is evidence that the jury "panel was [prejudiced] against Appellant." Appellant's Brief at 19. Appellant raised this same argument on direct appeal in the context of whether the trial court should have discharged the juror. We held that Appellant "failed to meet his burden to show that the jury was not impartial." *Rush*, 162 A.3d at 539. Appellant's resurrection of this argument is specious.

both trial counsel and the trial court questioned all prospective jurors about their ability to be impartial. *Id.* at 27.

"A change of venue is compelled whenever a trial court concludes a fair and impartial jury cannot be selected from the residents of the county where the crime occurred." *Commonwealth v. Briggs*, 12 A.3d 291, 313 (Pa. 2011). Thus:

> the pivotal question in determining whether an impartial jury may be selected is not whether prospective jurors have knowledge of the crime being tried, or have even formed an initial opinion based on the news coverage they have been exposed to, but, rather, whether it is possible for those jurors to set aside their impressions or preliminary opinions and render a verdict solely based on the evidence presented to them at trial.

*Id.* at 314. Moreover:

> the mere existence of pre-trial publicity does not warrant a presumption of prejudice. *Commonwealth v. Chambers*, 546 Pa. 370, 685 A.2d 96, 103 (1996). "Our inquiry must focus upon whether any juror formed a fixed opinion of the defendant's guilt or innocence as a result of the pre-trial publicity." *Commonwealth v. Marinelli*, 547 Pa. 294, 690 A.2d 203, 213 (1997) (quotation omitted). Normally, what prospective jurors tell us about their ability to be impartial will be a reliable guide to whether the publicity is still so fresh in their minds that it has removed their ability to be objective. *Commonwealth v. Briggs*, 608 Pa. 430, 12 A.3d 291, 314 (2011). The discretion of the trial judge is given wide latitude in this area. *Id.*
>
> For pre-trial publicity to be presumptively prejudicial, a defendant must prove, *inter alia*, "that the publicity was so extensive, sustained, and pervasive without sufficient time between publication and trial for the prejudice to dissipate, that the community must be deemed to have been saturated." *Commonwealth v. Rucci*, 543 Pa. 261, 670 A.2d 1129, 1141 (1996). The publicity must be so inflammatory and slanted toward conviction "rather than factual and objective." *Marinelli*, 690 A.2d at 213 (quotation omitted). "Finally, even if there has

been inherently prejudicial publicity which has saturated the community, no change of venue is warranted if the passage of time has sufficiently dissipated the prejudicial effects of the publicity." **Chambers**, 685 A.2d at 103.

**Commonwealth v. Tanner**, ___ A.3d___ 2019 PA Super 62 (Pa. Super. filed

February 27, 2019).

The PCRA court rejected this ineffectiveness claim as follows:

Lastly, Appellant alleges trial counsel was ineffective for failing to pursue a motion for a change of venue,[2] as multiple jurors expressed knowledge of the case and a love of dogs. A change of venue is appropriate where "a fair . . . trial cannot otherwise be had in the county where the case is currently pending." Pa.R.Crim.P. 584 (A). Further, this [c]ourt was "in the best position to assess the atmosphere of the community and to judge the necessity of any requested change." *Commonwealth v. Walter*, 119 A.3d 255, 270 (Pa. 2015). The standard voir dire questions for prospective jurors ask if they know anything about the case or have read, seen or heard anything about this case.[3] All prospective jurors who answered this question in the affirmative were further questioned and any who were unable to fulfill their oaths were screened out at this stage. Furthermore, a love of dogs does not, *per se*, preclude a juror from fairly weighing the evidence.[4]

> [2] Trial counsel did file a Motion for Change of Venue. This [c]ourt conducted a test panel *voir dire*, after which Appellant withdrew his motion.

> [3] This [c]ourt notes that the January 2014 underlying incident garnered significant media attention, but by the time of the trial in December, coverage had reduced drastically.

> [4] This [c]ourt takes judicial notice of the fact that a love of dogs is a statewide phenomenon.

PCRA Court Opinion, 8/22/18, at 5–6.

Upon review, we conclude the record supports the PCRA court's determination that a change of venue was not warranted; we further conclude that its determination is free of legal error. **Staton**, 184 A.3d 949. Considering the record in the light most favorable to the Commonwealth, Appellant's bald assertions of pretrial publicity fall short of establishing the pervasiveness and sustained negative publicity required to change venue of a case. **Tanner**, 2019 PA Super 62 at *3. As the PCRA court observed, eleven months passed from the incident in January 2014 until Appellant's trial in December 2014. **Accord Tanner**, 2019 PA Super 62 at *4 (holding that change of venue was properly denied where publicity was followed by eleven-month "cooling off" period sufficient to dispel prejudice); **Commonwealth v. Walter**, 119 A.3d 255 (Pa. 2015) (same). Additionally, the trial court asked each potential juror if he or she was aware of the case because of pretrial publicity and, if so, whether the publicity would influence his or her judgment in rendering a fair and impartial verdict. Any prospective jurors who were unable to fulfill their oaths did not serve. Thus, Appellant's underlying argument lacks merit. Accordingly, we conclude the PCRA court did not err in denying Appellant's final claim of ineffective assistance of counsel.

Appellant has not established that trial or direct appeal counsel was ineffective. Therefore, the PCRA court did not err in denying Appellant relief. Accordingly, we affirm the PCRA court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/10/2019