J-A22038-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KESHAWN CURTIS MCLAURIN | : | |
| | : | |
| Appellant | : | No. 1009 WDA 2023 |

Appeal from the PCRA Order Entered August 2, 2023
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001498-2016

BEFORE:  MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED:  November 15, 2024**

Appellant, Keshawn Curtis McLaurin, appeals from the order entered in the Erie County Court of Common Pleas, which denied his petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows. In July 2015, a large group of people attended a party in Erie, Pennsylvania. Appellant drove his Ford Explorer SUV to the scene, and as he rounded the corner onto Summit Street, gunshots were heard and seen coming from both sides of the vehicle.  Bullets hit bystanders on both sides of the street: Shakur Franklin was killed, and three others were seriously wounded.  Appellant fled the scene in his car, lost control of the vehicle, and crashed into a telephone pole on a nearby street.  Appellant and two other men were seen crawling out

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

of the SUV through the passenger side window and fleeing on foot.

Following Appellant's arrest, he admitted to owning the wrecked SUV, which was registered in his name, and admitted to driving it when the shootings occurred. He denied that anyone else had recently driven the car; denied driving down Summit Street on the night of the shooting; and denied that anyone else was in the car with him on the night of the shooting. Officers recovered a .38 caliber H&R double-action revolver on the street outside of Appellant's SUV and a Smith and Wesson double-action revolver inside the SUV. Both firearms had five spent rounds in their chambers.

The matter proceeded to trial and a jury convicted Appellant of first-degree murder, criminal conspiracy to commit murder, possession of instruments of crime, carrying a firearm without a license, and two counts each of aggravated assault and recklessly endangering another person.[2] On March 20, 2018, the court sentenced Appellant to life without parole for the murder conviction, plus additional terms of imprisonment for other convictions. This Court affirmed Appellant's judgment of sentence on October 29, 2019, and our Supreme Court denied allowance of appeal on November 17, 2021. *See Commonwealth v. McLaurin*, 222 A.3d 886 (Pa.Super. 2019) (unpublished memorandum), *appeal denied*, ___ Pa. ___, 267 A.3d 489 (2021).

---

[2] The court granted motions for judgments of acquittal submitted by Appellant's co-defendants, after a witness failed to appear for testimony. (**See** N.T. Trial, 1/25/18, at 7-15).

On February 15, 2022, Appellant timely filed a PCRA petition, raising claims of ineffective assistance of counsel and contending that the evidence was insufficient to support his convictions. On December 29, 2022, the PCRA court held an evidentiary hearing. Appellant presented the testimony of trial counsel; Dr. David Bizzak, an accident reconstructionist; and testified on his own behalf. The Commonwealth presented the testimony of Lt. Kenneth Kensill of the Erie Police Crime Scene Unit. On August 2, 2023, the PCRA court issued an order and opinion denying Appellant's petition.

On August 30, 2023, Appellant timely filed a notice of appeal. The PCRA court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and Appellant timely complied on September 27, 2023.

On appeal, Appellant raises the following issues for our review:

> I. WHETHER THE PCRA COURT ERRED IN DENYING RELIEF AND FOR NOT REVERSING [APPELLANT'S] JUDGMENT OF SENTENCE WHERE THE COMMONWEALTH FAILED TO CONVICT [APPELLANT] WITH SUFFICIENT EVIDENCE.
>
> II. WHETHER THE PCRA COURT ERRED IN NOT AWARDING A NEW TRIAL WHERE TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HE FAILED TO PROPERLY CHALLENGE THE ADMISSION OF INADMISSIBLE HEARSAY, HAD NO REASONABLE BASIS FOR NOT SO CHALLENGING SUCH EVIDENCE, AND [APPELLANT] WAS PREJUDICED AS A RESULT.
>
> III. WHETHER THE PCRA COURT ERRED IN NOT AWARDING A NEW TRIAL AFTER [APPELLANT] PROVED THAT TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO CALL AN ACCIDENT RECONSTRUCTIONIST TO TESTIFY AT TRIAL.

IV. WHETHER THE PCRA COURT ERRED IN NOT AWARDING A NEW TRIAL WHERE TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL REGARDING [APPELLANT'S] TESTIMONY AT TRIAL.

(Appellant's Brief at 4).

"Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." **Commonwealth v. Beatty**, 207 A.3d 957, 960-61 (Pa.Super. 2019), *appeal denied*, 655 Pa. 482, 218 A.3d 850 (2019). "[W]e review the court's legal conclusions *de novo*." **Commonwealth v. Prater**, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 386 (2021). "Traditionally, credibility issues are resolved by the trier of fact who had the opportunity to observe the witnesses' demeanor. A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts." **Beatty, supra** at 961 (internal citations and quotation marks omitted).

Preliminarily, we observe that in his first issue, Appellant contends that the Commonwealth failed to introduce sufficient evidence to support his convictions. This claim was previously litigated on direct appeal. **See McLaurin, supra**. Thus, it is not cognizable under the PCRA. **See Commonwealth v. Spotz**, 616 Pa. 164, 227, 47 A.3d 63, 101 (2012) (stating that where claim is rejected on direct appeal, that claim is not cognizable under PCRA because it has been previously litigated).

- 4 -

Appellant's remaining claims allege the ineffective assistance of counsel. "Counsel is presumed to have rendered effective assistance." ***Commonwealth v. Hopkins***, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. ***Commonwealth v. Chmiel***, 612 Pa. 333, 30 A.3d 1111 (2011).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.]" ***Commonwealth v. Smith***, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting ***Commonwealth v. Pierce***, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Poplawski***,

852 A.2d 323, 327 (Pa.Super. 2004) (quoting **Commonwealth v. Geathers**, 847 A.2d 730, 733 (Pa.Super. 2004)).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests." **Commonwealth v. Kelley**, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting **Pierce, supra** at 524, 645 A.2d at 194-95).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

**Commonwealth v. King**, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting **Sandusky, supra** at 1043-44).

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." **Commonwealth v. Spotz**, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted). "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." **Hopkins, supra** at 876 (quoting **Commonwealth v. Chambers**, 570 Pa. 3,

22, 807 A.2d 872, 883 (2002)).

In Appellant's first claim of ineffective assistance of counsel, he contends that trial counsel failed to properly challenge the admission of the testimony of Detective Lorah, in which the detective stated that he had arrested and charged one of Appellant's co-defendants based upon the statement of Eugene Husband, who was not available to testify at trial. Appellant also challenges the testimony of Demarcus Cleckley, who spoke with Mr. Husband. Appellant contends that these statements were inadmissible hearsay that were used to prove the truth of the matter: namely, that Appellant was in the area at the time of the shooting, that he was not alone in the vehicle, and that Appellant and the occupants of the vehicle had said something that caused Mr. Husband and Mr. Cleckley to flee before shots rang out. Appellant submits that trial counsel had no reasonable basis for failing to challenge this evidence, and that he was prejudiced as a result. Appellant concludes trial counsel was ineffective on these grounds, and this Court must grant relief. We disagree.

It is well-settled that:

> Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Hearsay testimony is *per se* inadmissible in this Commonwealth, except as provided in the Pennsylvania Rules of Evidence, by other rules prescribed by the Pennsylvania Supreme Court, or by statute. On the other hand, evidence that would constitute inadmissible hearsay if offered … for one purpose may be admitted for another purpose …

*Commonwealth v. Dent*, 837 A.2d 571, 577 (Pa.Super. 2003), *appeal*

*denied*, 581 Pa. 671, 863 A.2d 1143 (2004) (citations and internal quotation marks omitted).

> It is, of course, well established that certain out-of-court statements offered to explain a course of police conduct are admissible. Such statements do not constitute hearsay since they are not offered for the truth of the matters asserted; rather, they are offered merely to show the information upon which police acted.
>
> Nevertheless, it cannot be said that every out-of-court statement having bearing upon subsequent police conduct is to be admitted, for there is great risk that, despite cautionary jury instructions, certain types of statements will be considered by the jury as substantive evidence of guilt. Further, the police conduct rule does not open the door to unbounded admission of testimony, for such would nullify an accused's right to cross-examine and confront the witnesses against him.

*Id.* at 579 (quoting **Commonwealth v. Palsa**, 521 Pa. 113, 555 A.2d 808 (1989)) (internal citations and emphasis omitted).

Instantly, with respect to the testimony of Detective Lorah, the PCRA court explained:

> The first situation arose in the Commonwealth's re-direct examination of affiant Detective Lorah, responding to the cross-examination questions from the lawyers for [co-defendants Stephen] Russell and [Jahaun] Jones designed to convey to the jury that Detective Lorah had no evidentiary basis to arrest these two defendants. The prosecutor was permitted, over the objection of [Appellant's] counsel, to ask a very focused question regarding the arrest of Jones and Russell, specifically whether their arrests were based on the statement of Eugene Husband. The question addressed the clear implication by Jones and Russell that there was no basis for them to even be arrested. It was appropriate to allow such re-direct examination for several reasons.

- 8 -

The Commonwealth on direct examination of Detective Lorah did not attempt to proffer any information attributed to Eugene Husband to implicate Jones or Russell. Rather, [Detective] Lorah's testimony related solely to a matter first raised on cross-examination, hence it was the defense who "opened the door" to this issue.

The substance of Husband's statement was never asked nor given. Instead, the substance of [Detective] Lorah's testimony was his explanation of why he arrested Jones and Russell to rebut the defense contention he arrested two people without any basis to do so. It was [Detective] Lorah explaining from his own firsthand information why he did what he did. He was then available for cross-examination based on his direct information and not something he needed to cite from a third person. There was never any hearsay statement introduced for the truth of the information contained within Husband's statement to Detective Lorah.

While [trial counsel] objected to the Commonwealth's re-direct of Detective Lorah on this issue, the reality is the testimony did not involve [Appellant]. The question before the jury was not whether Detective Lorah had a basis to arrest [Appellant]. The focus was on the basis for the arrests of Jones and Russell[, Appellant's co-defendants].

(PCRA Court Opinion, 8/2/23, at 56-57) (internal citations omitted).

Regarding the testimony of Demarcus Cleckley, the PCRA court explained that Mr. Cleckley had testified to events he had personally seen and experienced:

Cleckley saw a gold, four door Ford SUV on the corner of Peach and West 29th Street. He observed four individuals inside the gold Ford SUV. He witnessed Eugene Husband approach the gold Ford SUV and it appeared that Husband knew these people because he was talking to them for thirty seconds or so. He saw the gold SUV leave on West 29th Street in the direction of the party. These were all the firsthand personal observations of Cleckley.

> Cleckley was specifically instructed by the prosecutor not to say anything about what Husband said to him. He testified upon Husband's return from the gold SUV, they proceeded down West 29th Street. They were running when Cleckley heard gun shots coming from the area of the party.
>
> Cleckley did not learn any of the information he testified to from Husband. None of Cleckley's observations were based on anything Husband said to him. In fact, Cleckley did not testify to anything Husband said to him about any conversation with the people in the gold Ford SUV. The substance of Cleckley's testimony was based entirely on his firsthand personal observations …

(*See id.* at 58-59). The PCRA court rejected Appellant's argument that this was an attempt to "backdoor" Mr. Husband's testimony, because Mr. Cleckley did not testify about anything Mr. Husband said to him. (*See id.*)

The record supports the PCRA court's conclusions. At a sidebar, the assistant district attorney indicated that he planned to ask Detective Lorah why he arrested Appellant's co-defendants, because their attorneys had argued that there was no physical evidence or positive identification linking them to the crime. (*See* N.T. Trial, 1/24/18, at 213-14). Appellant's trial counsel initially made a hearsay objection, but the court overruled the objection because the testimony was being offered solely to explain the basis for the arrests. (*See id.* at 215). Detective Lorah testified solely that he arrested the co-defendants based upon the statement of Mr. Husband, and Mr. Jones' (one of the co-defendants) fingerprint. (*See id.* at 218). Mr. Cleckley testified solely to his own personal observations. (*See id.* at 233-236). Thus, trial counsel was not ineffective because he objected to the

detective's testimony, but the court overruled the objection where Detective Lorah's testimony was offered to explain a course of police conduct and not for the truth of the matter asserted. **See Dent, supra**. Further, trial counsel was not ineffective for failing to object to Mr. Cleckley's testimony because it did not contain a hearsay statement. **See id.** Therefore, this claim lacks arguable merit. **See Smith, supra**; **see Poplawski, supra**.

In Appellant's second claim of ineffective assistance of counsel, he contends that trial counsel failed to call an accident reconstructionist to testify at trial. Appellant argues that an accident reconstructionist would have helped him cast doubt upon whether his vehicle had, indeed, traveled down Summit Street on the night of the shooting. He contends that at the PCRA evidentiary hearing, trial counsel admitted that he had not considered consulting such an expert, and that he should have consulted such an expert. For these reasons, Appellant suggests that trial counsel was ineffective, and the trial court should have granted his petition. We disagree.

> To satisfy the "arguable merit" prong for a claim of ineffectiveness based upon trial counsel's failure to call an expert witness, the petitioner must prove that an expert witness was willing and available to testify on the subject of the testimony at trial, counsel knew or should have known about the witness and the defendant was prejudiced by the absence of the testimony. **Commonwealth v. Chmiel**, 612 Pa. 333, 30 A.3d 1111, 1143 (2011); **Commonwealth v. Gibson**, 597 Pa. 402, 951 A.2d 1110, 1133 (2008). Prejudice in this respect requires the petitioner to "show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." **Commonwealth v. Sneed**, 616 Pa. 1, 45 A.3d 1096, 1109 (2012) (quoting **Gibson**, 951 A.2d at 1134). Therefore, the

- 11 -

> petitioner's burden is to show that testimony provided by the uncalled witnesses "would have been helpful to the defense." *Id.* (quoting *Commonwealth v. Auker*, 545 Pa. 521, 681 A.2d 1305, 1319 (1996)).

*Commonwealth v. Williams*, 636 Pa. 105, 137–38, 141 A.3d 440, 460 (2016) (footnotes omitted).

Instantly, we initially observe that although an accident reconstructionist, Dr. Bizzak, testified at the PCRA hearing, he did not testify that the testimony he provided at the PCRA hearing was readily available at the time of trial and could have been provided if he had been retained.[3] *Cf. Chmiel, supra*; *Williams, supra* (where record showed that both experts testified that testimony provided at PCRA hearing was readily available at time of trial and could have been provided if they had been retained). As a result, Appellant has not satisfied the "arguable merit" prong for failure to call an expert witness on this basis alone.

Additionally, the PCRA court credited trial counsel's explanation that he did not call an accident reconstruction expert because he did not think that such an expert could provide the "necessary conclusion" that Appellant drove over West 29th Street to Myrtle Street. (PCRA Court Opinion, 8/2/23, at 56-57). Further, the court observed that Dr. Bizzak **did not** testify with a

---

[3] In Appellant's counseled PCRA petition, Dr. Bizzak certified that he intended to testify at the evidentiary hearing with regard to the information set forth to various exhibits attached to the petition, which included his expert report, CV, and history of expert testimony he had provided. (*See* PCRA Petition, 2/15/22, Cert. of David Bizzak, Ph.D.). However, the expert did not certify that he was available to testify at trial or would have testified at trial had he been retained.

reasonable degree of engineering certainty that Appellant drove this route on the night of the shooting. (*See id.*) The PCRA court went on to list various reasons why it found Dr. Bizzak's report unreliable.

To summarize, the PCRA court opined that Appellant failed to establish that his vehicle and its powertrain control module ("PCM")[4] were available for examination, either at the time of Appellant's arrest and retention of trial counsel, or in the preparation of Dr. Bizzak's expert witness report. (*See id.* at 42). Indeed, Dr. Bizzak repeatedly testified that he did not have access to the PCM and could not perform a proper accident reconstruction. (N.T. PCRA Hearing, 12/29/22, at 72-74). Additionally, the PCRA court observed that, even if Dr. Bizzak had access to the PCM, it would be of limited use to the defense since it had no GPS capability, and only recorded information in 25 second increments before being rewritten, meaning that there was no guarantee the PCM would contain information regarding the 25 seconds before the crash. (PCRA Court Opinion, 8/2/23, at 43-44). Ultimately, the court concluded that Dr. Bizzak's report was speculative rather than factual, particularly where he had never visited the accident site or contacted the police department's lead accident investigator. (*See id.* at 47-48). The PCRA court concluded that, at best, Dr. Bizzak had established that no one downloaded the PCM, that Appellant was driving at least 30-35 mph at the

---

[4] Dr. Bizzak testified that a powertrain control module records information during car crashes that allows an accident reconstructionist to determine the severity of the collision as well as how it was operated in the moments prior to a collision. (N.T. PCRA Hearing, 12/29/22, at 61-62).

time of the accident and was "probably" not going over 50 mph.[5] (*See id.* at 53).

Based on the above, the record supports the PCRA court's conclusion that trial counsel was not ineffective for failing to call an expert witness, because Appellant failed to establish that Dr. Bizzak was available at the time of trial, and because Dr. Bizzak's report was not helpful to the defense. *Chmiel, supra*; *Williams, supra*.

In Appellant's final issue, he contends that trial counsel was ineffective by advising Appellant not to testify on his own behalf. Appellant argues that he wanted to testify on his own behalf and explain to the jury what really happened on the night of the shooting. However, Appellant asserts that he did not want to implicate his cousin and co-defendant, Jahaun Jones, and trial counsel stated that, if Appellant testified, his testimony would implicate Jones and Russell, who were with him that night.

Appellant submits that the trial court granted the motions for judgment of acquittal "at a time prior to [Appellant] needing to testify." According to Appellant, because double jeopardy would bar the subsequent prosecution of Jones or Russell, Appellant's testimony could not have implicated them. Thus, Appellant asserts that trial counsel was ineffective for failing to advise him to testify after the acquittals, because his testimony would have established that

---

[5] The PCRA court thoroughly examined and listed multiple other issues with Dr. Bizzak's testimony and report. (PCRA Court Opinion, 8/2/23, at 40-73).

he did not know anyone in his car was going to shoot any weapons that night, and that he did not shoot any weapons that night. We disagree.

This Court has observed that:

> "The right of an accused to testify on his own behalf is a fundamental tenet of American jurisprudence and is explicitly guaranteed by Article I, Section 9 of the Pennsylvania Constitution." *Commonwealth v. Nieves*, 560 Pa. 529, 534-35, 746 A.2d 1102, 1105 (2000). Significantly, "the presumption must always be against the waiver of a constitutional right," and we are bound to "place the burden of proving waiver on the Commonwealth." *Commonwealth v. Robinson*, 970 A.2d 455, 458 (Pa.Super. 2009) (*en banc*) (internal citations omitted). Thus:
>
>> The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.
>
> *Nieves, supra* at 533-34, 746 A.2d at 1104 (internal citations omitted).
>
>> [T]he appropriate standard for assessing whether a defendant was prejudiced by trial counsel's ineffectiveness regarding the waiver of his right to testify is whether the result of the **waiver proceeding** would have been different absent counsel's ineffectiveness, not whether the outcome of the trial itself would have been more favorable had the defendant taken the stand.
>
> *Commonwealth v. Walker*, 110 A.3d 1000, 1005 (Pa.Super. 2015), *appeal denied*, 633 Pa. 756, 125 A.3d 777 (2015) (emphasis in original).

- 15 -

*Commonwealth v. Washington*, 269 A.3d 1255, 1263-64 (Pa.Super. 2022) (*en banc*), *appeal denied*, ___ Pa. ___, 283 A.3d 1249 (2022). "It is well settled that a defendant who made a knowing, voluntary, intelligent waiver of testimony may not later claim ineffective assistance of counsel for failure to testify." *Commonwealth v. Lawson*, 762 A.2d 753, 755 (Pa.Super. 2000), *appeal denied*, 566 Pa. 638, 781 A.2d 131 (2001) (citations omitted).

Instantly, Appellant was colloquied on the record regarding his decision not to testify and stated that he did not wish to testify and was not being pressured or forced into that decision. (*See* N.T. Trial, 1/24/18, at 254). Prior to Appellant's waiver, the trial court explained extensively to Appellant the rights he was giving up, that, if Appellant did choose to testify, his juvenile adjudication for robbery would be admitted into evidence and the jury instructed on *crimen falsi*, and that the decision not to testify was not binding. (*See* N.T. Trial, 1/24/18, at 244-55).

Here, Appellant fails to demonstrate how the result of the waiver proceeding would have been different absent counsel's ineffectiveness. *See Washington, supra*. Appellant was fully colloquied on the record and stated that he understood the rights he was giving up. Further, Appellant admitted at the PCRA hearing that once he knew his co-defendants were acquitted, he did not tell trial counsel that he wanted to testify at that point. (*See* N.T. PCRA Hearing at 114-15). Additionally, the PCRA court expressly rejected as incredible Appellant's claim that he would have testified had he known that once his co-defendants were acquitted, they could no longer be prosecuted

for the crimes. (**See** PCRA Court Opinion at 38) (concluding that based on nature of Appellant's relationships with occupants of his SUV, his lack of motive to protect his co-defendants, implausibility of his cover story that he did not even know to ask trial counsel about implicating his co-defendants, his prior *crimen falsi* adjudication, and his proven history of fabrications, Appellant's "sophistry that the singular factor in his decision not to testify was the impact it would have on [his co-defendants], is not credible"). (**See also** **id.** at 17-38) (where PCRA court provides detailed analysis to support its credibility determination). We see no reason to disrupt the court's credibility determination here. **See Beatty, supra**. The record confirms that Appellant's waiver of his right to testify was knowing, intelligent, and voluntary, and he cannot now claim ineffective assistance of counsel for his own decision not to testify. **Lawson, supra**. Thus, Appellant's final issue merits no relief. Accordingly, we affirm the order denying PCRA relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE:  11/15/2024